[S.F. No. 24716. Aug. 8, 1985.]

STATE PERSONNEL BOARD et al., Plaintiffs and Respondents, v.
FAIR EMPLOYMENT AND HOUSING COMMISSION et al.,
Defendants and Appellants;
RICHARD ARTHUR AMON et al.,
Real Parties in Interest and Respondents.

424

COUNSEL

Rogers, Joseph, O'Donnell & Quinn, Marjorie E. Cox, David A. Garcia, Steve Owyang, Joy Fisher, Mark Guerra, Marjorie Gelb, Prudence Poppink, Robert Barnes, McCutchen, Doyle, Brown & Enersen, James L. Hunt, Ray L. Wong and Richard D. Zimmerman for Defendants and Appellants.

Dennis M. Sullivan, Jeffrey Sloan, Andrea L. Biren, Christina Hall and Kramer & Hall as Amici Curiae on behalf of Defendants and Appellants.

John K. Van de Kamp and George Deukmejian, Attorneys General, N. Eugene Hill, Assistant Attorney General, Carol Hunter and Talmadge R. Jones, Deputy Attorneys General, for Plaintiffs and Respondents.

Joan Messing Graff, Linda J. Krieger and Patricia Shiu for Real Parties in Interest and Respondents.

OPINION

BROUSSARD, J.—This case presents the question whether the agencies charged with carrying out the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.)[1] may constitutionally exercise jurisdiction over state civil service employees.

---

[1] All statutory references are to the Government Code unless otherwise indicated.

In 1981, the Fair Employment Practice Act and the Rumford Fair Housing Act were combined to form the Fair Employment and Housing Act (§ 12900 et seq.), pursuant to the Governor's Reorganization Plan No. 1 (Stats. 1980, ch. 992, p. 3138). This change abolished the Division of Fair Employment Practices and the Fair Employment Practices Commission, both within the Department of Industrial Relations, and recreated them as the Department of Fair Employment and Housing and the Fair Employment and Housing Commission, respectively.

Real parties in interest are applicants for state civil service employment who claim they were denied positions because of discrimination on the basis of physical handicap. They have sought to have their claims investigated and adjudicated by the Department of Fair Employment and Housing (DFEH or Department) and the Fair Employment and Housing Commission (FEHC or Commission). In opposition to their claims, respondent State Personnel Board has secured an injunction prohibiting DFEH and FEHC from processing real parties' complaints—as well as the complaints of all civil service employees and applicants throughout the state. The State Personnel Board (the Board) asserts that article VII of the California Constitution affords it exclusive jurisdiction over all aspects of the examination and selection of civil service employees.[2] The Board claims that its jurisdiction cannot be shared concurrently with DFEH and FEHC without a "fragmentation and fractionalization of the merit selection process."

To resolve this jurisdictional dispute we must decide whether the Legislature intended to include civil service employees within the coverage of the Fair Employment and Housing Act (FEHA or the Act) and, if so, whether the Legislature acted unconstitutionally in so including them.

### FACTS AND PROCEDURAL BACKGROUND

In response to an announcement published by the Board in 1977, real parties in interest Richard Amon, Frederick Pade and Edith Williams applied for positions as traffic officer cadets with the California Highway Patrol. Having passed all written and oral examinations, and having been placed on the eligible list, they underwent a required physical examination. Each was subsequently disqualified on the basis of the Board's medical standards for the position. Amon was disqualified because of mild deuteranopia (i.e., mild colorblindness); Pade because of early changes in his thoracic spine characteristic of hypertrophic osteoarthritis; and Williams because she had undergone intestinal bypass surgery to alleviate a weight problem.

Amon, Pade and Williams each sent letters protesting their disqualification, and the Board treated their protests as "medical appeals" rather than

---

[2]Article VII provides, in relevant part:
Section 1, subdivision (b): "In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination."
Section 3, subdivision (a): "The board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions."

as complaints of discrimination on the basis of physical handicap.[3] Pade and Williams pursued their appeals to a hearing, where the Board upheld their disqualifications. Amon did not pursue his protest in proceedings before the Board.

Each of the real parties also filed timely complaints with the DFEH. After investigation, DFEH found cause to believe that the Board and the California Highway Patrol had committed an unfair employment practice. It issued accusations charging the Board and the Highway Patrol with discrimination on the basis of physical handicap.

A hearing was noticed in Pade's case, but before it could be held the Board filed this action in superior court to enjoin DFEH and FEHC from exercising jurisdiction over real parties' claims. The court entered a judgment permanently enjoining DFEH and FEHC "from initiating, accepting, or issuing any further investigations, complaints, accusations, notices of hearing, subpoenas, or other administrative or legal process in these or any other cases involving state agencies or agencies within the state civil service system under article VII." The court based its decision on article VII of our Constitution, which it interpreted as granting to the Board "exclusive jurisdiction" over all matters involving state civil service employees.

Subsequent to the trial court's judgment in this case, we issued a decision in the unrelated case of *Pacific Legal Foundation* v. *Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215]. In *Pacific Legal Foundation* we rejected the "exclusive jurisdiction" interpretation of article VII relied on by the trial court here. ▉ For the reasons discussed below, the implications of our decision in *Pacific Legal Foundation* lead us to reject the Board's assertion of exclusive jurisdiction over civil service discrimination complaints. Accordingly, after determining that the Legislature intended the FEHA to cover state civil service employees, we reverse the judgment of the trial court and dissolve the injunction entered against DFEH and FEHC.

---

[3] In a "medical appeal" the Board inquires: (1) whether the complainant in fact has the disqualifying medical condition; and (2) whether the medical criterion is job-related.

In *MacPhail* v. *Court of Appeal* (1985) *post,* page 454 [217 Cal.Rptr. 36, 703 P.2d 374] a related case which we also decide today, the complainant explicitly based his appeal on physical handicap discrimination and yet, as with the real parties in this case, the Board treated it as a medical appeal rather than a discrimination complaint under section 19702.

A discrimination proceeding before the FEHC would address the two questions listed above, as well as two additional questions: whether the complainant could in fact perform the job in question despite his or her medical condition, and whether the complainant could perform the job with reasonable accommodation to the handicap. (See Cal. Admin. Code, tit. 2, §§ 7293.8(b)-(c), 7293.9.)

I.

The FEHA is a comprehensive scheme for the realization of the state's public policy "to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race, religious creed, color, national origin, ancestry, physical handicap,[4] medical condition,[5] marital status, sex or age." (§ 12920.) To carry out this policy, the Act creates two administrative bodies—the DFEH, which performs investigatory, conciliatory and prosecutorial functions in relation to discrimination complaints, and the five-member FEHC, which performs adjudicatory and rulemaking functions. (§§ 12930, 12935.) A person who claims to have suffered discrimination in employment may file a complaint with the DFEH, which is then empowered to investigate, take depositions, issue subpoenas and engage in discovery procedures. The DFEH can issue a "right to sue" letter, which allows the complainant to pursue a private court action under the FEHA. (§ 12965, subd. (b).) Alternatively, the DFEH can issue a written accusation if it determines that the complaint is valid and cannot be resolved through conciliation. (§ 12965, subd. (a).) The DFEH acts as prosecutor on the accusation (which is the equivalent of a civil complaint) and argues the complainant's case before the FEHC.

---

[4]"Physical handicap" is defined in section 12926, subdivision (h) as including "impairment of sight, hearing, or speech, or impairment of physical ability because of amputation or loss of function or coordination, or any other health impairment which requires special educational or related services." The term "handicap" is not limited to present disabilities, but also includes physical conditions "that may handicap in the future but have no presently disabling effect." (*American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 610 [186 Cal.Rptr. 345, 651 P.2d 1151].)

Regulations promulgated by Commission further define a "handicapped individual" as a person whose physical handicap "substantially limits one or more major life activities," or who "has a record" of such a handicap, or who is "regarded as having" the handicap. (Cal. Admin. Code, tit. 2, § 7293.6, subd. (j).)

Under the Commission's regulations, an employer may not reject an individual who can presently perform the job duties based on a risk of future injury, so long as the individual is able to perform the job over a reasonable length of time (to be determined on an individual basis). (Cal. Admin. Code, tit. 2, § 7293.8, subd. (d).)

An employer may exclude handicapped persons on the basis of class only if the employer proves that "all, or substantially all, persons in that class are unable to perform the job duties safely and efficiently." (*Sterling Transit Co.* v. *Fair Employment Practice Com.* (1981) 121 Cal.App.3d 791, 797 [175 Cal.Rptr. 548]; Cal. Admin. Code, tit. 2, § 7286.7, subd. (a).)

An employer may also refuse employment to individual handicapped persons who are unable to perform the job duties without endangering the health and safety of themselves or others. (§ 12940, subd. (a)(1); *Sterling Transit Co.* v. *Fair Employment Practice Com.*, *supra*, 121 Cal.App.3d at pp. 798-799.)

[5]"Medical condition" is defined in section 12926, subdivision (f) as including only health impairments "related to or associated with a diagnosis of cancer, for which a person has been rehabilitated or cured, based on competent medical service."

The FEHC has a number of remedial powers. It can issue cease and desist orders and can order reinstatement, hiring, promotion, and back pay. (§ 12970, subd. (a).) The question whether the FEHC can award compensatory and punitive damages was reserved by us in *Commodore Home Systems* v. *Superior Court* (1982) 32 Cal.3d 211, 215 [185 Cal.Rptr. 270, 649 P.2d 912], where we held that such damages may be awarded by a superior court in a private action under the FEHA. Once the FEHC issues an order, it is reviewable in superior court. (Code Civ. Proc., § 1094.5.)

The FEHC has several functions besides adjudication, which include promulgating rules and regulations to implement the Act, providing technical assistance, and gathering statistical data on the public employment workforce in the state. (§§ 12935, 19702.5.)

From this brief overview, we turn to the question whether civil service employees are included within the framework of the Act. To determine the Legislature's intent on this question we first turn to the language of the FEHA itself. The Act clearly manifests an intent to include both public and private employers within its scope. Section 12926, subdivision (c) defines the term "employer" as follows: "'Employer,' except as hereinafter provided, includes any person regularly employing five or more persons, or any person acting as an agent of an employer, directly or indirectly; *the state or any political or civil subdivision thereof* and cities." Thus, as recognized by the Courts of Appeal in *Hollon* v. *Pierce* (1967) 257 Cal.App.2d 468, 475 [64 Cal.Rptr. 808], and *Northern Inyo Hosp.* v. *Fair Emp. Practice Com.* (1974) 38 Cal.App.3d 14, 23 [112 Cal.Rptr. 872], the Act, by its terms, covers all employees of the "state."

The Board nevertheless argues that the reference to "state" within the definition of employer was merely intended by the Legislature to refer to those state agencies employing workers who are *exempt* from the civil service. This permits the Board to exercise exclusive jurisdiction over civil service employees, and DFEH and FEHC to exercise jurisdiction over exempt, noncivil service employees.[6]

In view of the unambiguous statement of legislative intent embodied in the definition of "employer," we cannot accept the partition of that definition urged by the Board. It is inconceivable that the Legislature could have silently excluded 130,000 civil servants from its contemplation when it provided that "state" employees would be covered by the Act.

---

[6]The Board informs us that there are approximately 130,000 classified civil service employees, and 89,000 exempt employees in state service.

Further evidence of legislative intent to include the civil service within the coverage of the Act is inferred from the Act's recordkeeping and reporting requirements. Section 12946 requires employers to retain employment applications and other records for a period of two years. The Board is specifically mentioned in this section: "[T]he State Personnel Board is exempt from the two-year retention requirement and shall instead, maintain such records and files for a period of one year." If the Board's employment decisions were not reviewable by DFEH and FEHC, there would be no reason for the Act to impose recordkeeping requirements on the Board. Furthermore, the Board is required by the Civil Service Act itself to submit to the Commission affirmative action plans for each state agency (§ 19702.5, subd. (a)) and statistical surveys of employees within each agency (§ 19702.5, subd. (b)). If FEHC had no authority to enforce the Act over the state civil service, these requirements would be superfluous.

The Board asserts that the purpose of the recordkeeping and reporting requirements mentioned above is only to allow FEHC to determine whether county and municipal employers—over whom the Commission admittedly does have jurisdiction—are "keeping pace" (presumably in the area of minority hiring) with the state civil service. The Board offers no support for this notion, and we cannot accept it in the face of the Act's explicit inclusion of state employees within its scope.

Whatever protestations the Board may make at this point, the fact is that for 20 years from the adoption of the Fair Employment Practices Act in 1959[7] until the initiation of this lawsuit in 1979, the Board acknowledged the power of DFEH and FEHC to enforce the Act within the state civil service. An example of this acknowledgment is found in an official handbook for investigators in which the Board in 1976 expressed its continuing policy that "nothing in the [Board] rules [regarding discrimination complaint procedures] precludes employees or applicants from filing a complaint with the *California Fair Employment Practices Commission,* or the Equal Employment Opportunity Commission or from bringing a court action." (Italics added.)[8]

---

[7]Statutes 1959, chapter 121 at pages 1999-2005. See *ante,* footnote 1.

[8]Another example of the Board's acknowledgment of concurrent jurisdiction is found in a 1979 memorandum regarding how to advise state employees of their right to bring a charge under the Fair Employment and Housing Act and other statutes:

"*Advisement of Access to Fair Employment Practices (F.E.P.C.), Equal Employment Opportunities Commission (EEOC), and SPB [State Personnel Board]:*

"All written notices to the complainant or his/her representative which set forth the decision of this Department to deny the complaint or otherwise rule against the complainant, shall contain a statement informing the complainant of his/her *right to address the matter to an appropriate state and/or civil rights compliance agency or to the SPB,* and of related time limits." (Italics added.)

Furthermore, since 1959 the DFEH has been actively investigating, prosecuting and conciliating the approximately 828 administrative complaints that have been filed against state agencies, 127 of which have named the Board itself as a respondent. Prior to the accusations filed in the cases of Amon, Pade and Williams (real parties in interest), DFEH had filed formal accusations of discrimination against state agencies in three cases. Because the FEHC never made a final determination of discrimination against the civil service, the Board asserts that in the past it only cooperated with the *investigatory* activities of DFEH, using them as a supplement to its own. The Board claims that the agencies had an "agreement" to this effect, but is unable to point to any writing evidencing such an agreement. In the face of the Board's past history of cooperation with the fair employment agencies, we decline to infer this agreement.

The Board urges that it is frivolous and wasteful to make two forums available to discrimination complainants where one would suffice. However, given the differences between the two statutory schemes, the Legislature's desire to include state employees within the purview of the FEHA, notwithstanding their coverage by the antidiscrimination provisions of the Civil Service Act, is understandable.[9] The procedures, protections and enforcement services available to discrimination claimants under the FEHA go beyond those available under the Civil Service Act. The Legislature's intent was to give public employees the same tools in the battle against employment discrimination that are available to private employees. ▉ The FEHA was meant to supplement, not supplant or be supplanted by, existing antidiscrimination remedies, in order to give employees the maximum opportunity to vindicate their civil rights against discrimination: "Nothing contained in this part shall be deemed to repeal any of the provisions of the Civil Rights Law or of any other law of this state relating to discrimination because of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex or age." (§ 12993, subd. (a).)

The differences between the two acts, though described by the Board as "miniscule," are manifold from the perspective of the discrimination vic-

---

[9]The Civil Service Act prohibits discrimination on the basis of "sex, race, religious creed, color, national origin, ancestry, marital status, or physical handicap unless it can be shown that the particular handicap is job related." (§ 19702, subd. (a).)

The Civil Service Act also contains restrictions on discrimination on the basis of age (§ 19700) and blindness and colorblindness (§ 19701).

tim.[10] We begin with the purposes of the two acts. The purpose of the Civil Service Act is to ensure that appointments to state office are made not on the basis of patronage, but on the basis of merit, in order to preserve the economy and efficiency of state service. (See § 18500.) The purpose of the FEHA is to provide effective remedies for the vindication of constitutionally recognized civil rights, and to eliminate discriminatory practices on the basis of race, religious creed, color, national origin, ancestry, physical handicap, medical condition, marital status, sex and age. (See §§ 12920, 12921; Cal. Const., art. I, § 8.) The Commission and Department have 25 years of administrative expertise solely in the prevention and remedying of civil rights discrimination, and thus have more specialized expertise in this area than does the Board.

The DFEH provides enforcement services to discrimination complainants that do not have a counterpart in the civil service system. Under the FEHA, the Department bears the expense of investigating, conciliating and, where necessary, prosecuting the action on behalf of the claimant. (§§ 12961-12963, 12963.1-12963.7.) This includes the services of an attorney from the Department to try the case at no expense to the claimant. (§ 12969.) If the Commission decides in the claimant's favor, the Department must thereafter conduct a compliance review to see that the employer is fully obeying the Commission's order. (§ 12973.)

These enforcement services are not available under the Civil Service Act. Appeals filed with the Board are initially investigated and conciliated not by a neutral, outside agency like the DFEH, but by the same state agency (the employer) that is charged with discrimination. (See Cal. Admin. Code, tit. 2, §§ 547.1-547.2.) Under the Civil Service Act, employees are not protected from disclosure of confidential information obtained during the conciliation process, as they are under the FEHA. (§ 12963.7.) Moreover, while complainants may hire an attorney to represent them at a Board hearing (Cal. Admin. Code, tit. 2, § 73), they must bear the cost themselves.

The procedural rights afforded under the FEHA are also quite different from Board procedures. Beginning with the filing of a complaint, the Board's internal rules require that appeal from an adverse employment decision be filed within 30 days (Board rule 64), whereas the FEHA provides

---

[10]The court has received numerous letters and briefs amicus curiae from organizations representing employees and groups protected from discrimination under the Civil Service Act and the FEHA. These organizations allege experiencing frustration and dissatisfaction in attempts to prosecute discrimination complaints before the Board. Amici curiae support the position of FEHC in this litigation, urging us to dissolve the injunction that has prevented their access to FEHA procedures.

a period of one year in which to file. (§ 12960.) Next, complainants under the FEHA have a private right of action in superior court—a right not afforded by the Civil Service Act. (§ 12965, subd. (b).)[11] If their case is tried before the FEHC instead of in superior court, and an adverse decision is reached, the superior court will independently review the evidence rather than deferring to the FEHC's adverse decision. (*Kerrigan* v. *Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43, 51 [154 Cal.Rptr. 29]; Code Civ. Proc., § 1094.5.) By contrast, in reviewing Board decisions the superior court is restricted to a "substantial evidence" standard of review under which "[f]actual determinations are not subject to reexamination in a *trial de novo,* but are to be upheld by a reviewing court if they are supported by substantial evidence." (*Long* v. *State Personnel Bd.* (1974) 41 Cal.App.3d 1000, 1008 [116 Cal.Rptr. 562].)

At the hearing, the Board provides less in the way of procedural rights to the complainant than does the FEHC. Of greatest moment is the fact that there is no right to cross-examination or direct examination of witnesses at Board hearings. Also, the rules of evidence do not apply, and the total length of a Board proceeding may not normally extend beyond two hours. Furthermore, the Board is not required to issue a formal decision unless one is requested before the case is submitted for decision. (§ 18682.) While the Board may refer a given complaint to a hearing officer for a full evidentiary hearing (see *Long* v. *State Personnel Bd., supra,* 41 Cal.App.3d 1000, 1005), this referral is—by the Board's admission—rarely made, and the referral decision is totally within the Board's discretion. (See Cal. Admin. Code, tit. 2, § 67.)

By contrast, FEHC hearings are always full evidentiary proceedings governed by the California rules of evidence and conducted in accordance with the California Administrative Procedure Act. (§ 11500 et seq.; § 12972.) A record is preserved to facilitate judicial review, and the FEHC is required to issue a decision setting forth findings of fact and conclusions of law in every contested case. (§§ 11517, subd. (b), 11518.) Cross-examination is, of course, permitted, unlike in a Board hearing.

In making its award, the FEHC is expressly authorized by section 12970 to require an employer to hire, reinstate or promote an employee. It can

---

[11]The private right of action under the FEHA, section 12965, subdivision (b) appears to be contingent on the Department's decision not to prosecute, or on the lapse of 150 days. As a practical matter, however, parties who intend to pursue their case in court are given "right to sue" letters in every case, even in advance of the 150-day limit. (See *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218, fn. 8 [185 Cal.Rptr. 270, 649 P.2d 912].)

also compensate the victim of discrimination with an award of back pay. Moreover, a prevailing complainant who demonstrates a need for independent counsel may be awarded attorney fees. (See *DFEH* v. *American Airlines* (1983) FEHC Dec. No. 83-15, pp. 56-68.) The same remedies, along with compensatory and punitive damages, may be awarded by a superior court in a private enforcement action under the FEHA, though punitive damages are not available against a public entity (§ 818).[12] By contrast, under the Civil Service Act provisions that governed the proceedings of the real parties in interest, there was no statutory authority for an award of back pay to discriminatorily rejected applicants, nor was there authority for the award of compensatory damages, punitive damages or attorney fees.[13]

The most fundamental difference between the two forums, however, is the nature of the forums themselves. The FEHC is a neutral body, disinterested in the controversy between employer and employee. By contrast, where Board standards are challenged as discriminatory, the Board occupies the roles of both defendant and judge. Internal review of challenged standards is a healthy endeavor for any agency, and the Board should not be deprived of this opportunity. However, the Legislature has provided *more* than this for state employees. It has provided for review of allegedly discriminatory standards by an independent adjudicatory body—the FEHC.[14]

Acknowledging, in effect, the superior rights and remedies afforded to discrimination complainants under the FEHA, the Board argues that "differences occur and are to be expected in treatment of the private and public labor sectors." While the Board is undoubtedly correct as a matter of history, our Legislature in recent decades has sought to alter the unequal treatment of the two groups through a series of enactments. These include the

---

[12]The issue whether the Commission, like the superior court in a private action, may award compensatory and punitive damages has not yet been resolved by this court. (See *ante* at p. 429.)

[13]Since the time the real parties' claims were heard by the Board, the Civil Service Act has been amended to give statutory authority to the Board to issue cease and desist orders and to order hiring, reinstatement, promotion, back pay and compensatory damages. (Stats. 1984, ch. 1754, § 6; § 19702, subd. (e).)

The fact that the Legislature has granted statutory powers to the Board that are already possessed by the Commission (§ 12970) without removing them from the Commission is further evidence of the Legislature's intent to provide parallel, not exclusive forums.

[14]We do not here suggest that the Board adopt each of the procedural safeguards employed in FEHC hearings. The Board must address every claim of discrimination brought to it, while the FEHC's cases are, in effect, preselected by DFEH, which only prosecutes those in which there is reason to believe that discrimination occurred.

Rather, we hold that the Legislature intended to make *both* Board and FEHC remedies available to civil service discrimination complainants, and that there is no basis for depriving these employees of the full panoply of rights available to them—as to private employees—under the FEHA.

George Brown Act of 1961 (§§ 3525-3537), the Meyers-Milias-Brown Act of 1968 (§ 3500 et seq.), the Educational Employment Relations Act of 1975 (§ 3540 et seq.), the State Employer-Employee Relations Act of 1977 (§ 3512 et seq.), and the Higher Education Employer-Employee Relations Act of 1978 (§ 3560 et seq.). (See *Pacific Legal Foundation, supra,* 29 Cal.3d at pp. 173, 175-179, 202.) These acts are designed to afford to public employees many of the rights previously enjoyed only by private employees.

Having established that the Legislature made a choice to afford both the remedies of the Civil Service Act and the FEHA to members of the state civil service, we now turn to the question whether the Legislature acted unconstitutionally, in violation of article VII of the California Constitution, in so doing.

## II.

The Board claims that if the FEHA applies to civil service employees, then that act is unconstitutional under article VII. Article VII provides in pertinent part:

Section 1, subdivision (b): "In the civil service permanent appointment and promotion shall be made under a general system based on merit ascertained by competitive examination."

Section 3, subdivision (a): "The board shall enforce the civil service statutes and, by majority vote of all its members, shall prescribe probationary periods and classifications, adopt other rules authorized by statute, and review disciplinary actions."

The Board interprets the above quoted sections as granting to it sole jurisdiction over the examination and selection of civil service employees, to the exclusion of the fair employment agencies' inquiries into instances of alleged discrimination in examination and selection. The Board sees the exercise of jurisdiction by DFEH and FEHC over state employees as a threat to the merit principle, which it asserts will be "fragmented and fractionalized" if DFEH and FEHC are allowed to fulfill their statutory mandates. As we explain below, however, we cannot accept the Board's claim of irreconcilable conflict between the various agencies' jurisdictions.

In *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d 168, we rejected a claimed conflict between the Board's "exclusive jurisdiction" under article VII and the provisions of the State Employer-Employee Relations Act

(SEERA). (§ 3512 et seq.) Petitioners in *Pacific Legal Foundation* made several arguments based on article VII, each discussed separately below: first, that collective bargaining under SEERA would conflict with the general "merit principle" embodied in article VII; second, that SEERA's reservation of ultimate salary setting authority to the Governor and Legislature conflicted with the Board's article VII mandate to "prescribe classifications" and to "enforce the civil service statutes"; and third, that SEERA's grant to the Public Employment Relations Board (PERB) of initial jurisdiction over "unfair labor practices" conflicted with the Board's mandate under article VII to "review disciplinary actions" against civil service employees.

Our review of the history and purposes of article VII in *Pacific Legal Foundation* (see 29 Cal.3d at pp. 181-184) is relevant here as well. We noted that in the early part of this century, legislative attempts to combat the "spoils system" of political patronage in state employment had largely failed. In response to widespread publicity concerning this problem, the people in 1934 adopted article XXIV (predecessor to today's art. VII)[15] which enshrined the merit principle in the state Constitution beyond the reach of abuses by political incumbents. After examining the ballot argument accompanying the 1934 initiative measure, we concluded, quoting from the ballot pamphlet, that "the 'sole aim' of the amendment was to establish, as a constitutional mandate, the principle that appointments and promotions in state service be made solely on the basis of merit. Having established this 'merit principle' as a matter of constitutional law, and having established a nonpartisan Personnel Board to administer this merit principle, the constitutional provision *left the Legislature with a 'free hand' to fashion 'laws relating to personnel administration for the best interests of the State.'* " (*Id.,* at pp. 183-184, italics added.) We further noted that "the 1934 ballot argument makes it quite plain that the draftsmen of the provision intended only 'to prohibit appointment and promotion in State service except on the basis of merit,' and did not intend to engrave into the state Constitution every aspect of the then current civil service system." (*Id.,* at p. 184, fn. 7.)

---

[15]"The current provisions of article VII derive directly from the provisions of former article XXIV. The 1934 version of article XXIV was revised in 1970 under the auspices of the California Constitution Revision Commission, but the revision made no substantive changes in the provisions relevant to this action and merely deleted obsolete and superfluous language from the original provisions. (See Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 3, 1970) pp. 23-24.) Under a constitutional reorganization measure in 1976, article XXIV was repealed but its provisions were adopted verbatim as article VII. (See Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Prim. Elec. (June 8, 1976) pp. 58-59.)" (*Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 184, fn. 8.)

In response to petitioners' first argument, we held that the collective bargaining process established by SEERA did not on its face conflict with the merit principle of article VII, which simply sought to eliminate the "spoils system" of public employment. A conflict could theoretically arise if an agreement emerging out of the collective bargaining process purported to encroach on the merit principle by, for example, authorizing hiring or promotion on a politically partisan basis. Otherwise, we noted, nothing in the history of the amendment suggests that the Legislature would be prohibited "from adopting a labor relations policy affording employees a meaningful voice in determining the terms and conditions of their employment." (*Id.,* at p. 185.)

We likewise rejected petitioners' second argument, that an "integral part" of the Board's constitutional authority to prescribe classifications was the power to set salaries for those classifications. (*Id.,* at pp. 187-193.) In the past, we noted, the Board had consistently acknowledged the authority of the Governor to negotiate and set salaries through collective bargaining. (*Id.,* at pp. 191-192.) We repeated the principle that an actual conflict with the Constitution would be one where a salary measure interfered with the fundamental merit principle that the classification system serves. (*Id.,* at p. 193.) We similarly dismissed a claimed conflict between the Governor's salary-setting authority under SEERA and the Board's mandate "to enforce the civil service statutes." (*Id.,* at pp. 193-196.) Petitioners argued (on the basis of art. XXIV as originally worded) that if the Legislature was to delegate salary setting authority to anyone, it must delegate it to the Board. In response, we noted that the ballot argument for article XXIV "explicitly disclaimed any intent to restrict the Legislature to any particular mode of personnel administration. . . . [¶] . . . Although the constitutional amendment established the nonpartisan State Personnel Board to ensure that the merit principle was properly safeguarded, *the amendment did not propose to preclude the Legislature from adopting new personnel administration procedures, which do not impinge upon the merit principle, outside of the State Personnel Board's sphere.* . . . '[Article XXIV] was not presented as an organic blueprint for the structure of agencies within the state's executive branch.'" (*Id.,* at pp. 194-196, italics added, quoting *California State Employees' Assn.* v. *Williams* (1970) 7 Cal.App.3d 390, 398 [86 Cal.Rptr. 305].)

The third and final argument made in *Pacific Legal Foundation* concerning the alleged conflict between SEERA and article VII was that PERB's jurisdiction to investigate and devise remedies for unfair practices was irreconcilably in conflict with the State Personnel Board's jurisdiction to "review disciplinary actions." (*Id.,* at p. 196.) We acknowledged that the two juris-

dictions overlap in certain areas, such as where a disciplinary action is alleged to have been motivated by antiunion animus, and held that the proper approach was to *"harmonize the disparate procedures rather than simply invalidate one or the other on broad constitutional grounds."* (*Id.*, at p. 197, italics added.) Our expressed goal was to give each statutory scheme reasonable and full effect. (*Id.*; see also *Burks* v. *Poppy Construction Co.* (1962) 57 Cal.2d 463 [20 Cal.Rptr. 609, 370 P.2d 313].)

Although we did not definitely decide the source of PERB's authority in *Pacific Legal Foundation,* we noted that accommodation between PERB and the Board was appropriate even if the Board's authority flowed from the Constitution and PERB's authority flowed only from the statute. (*Id.*, at p. 197, fn. 19.) The starting point of this accommodation was the recognition that "each agency was established to serve a different, but not inconsistent, public purpose. The State Personnel Board was granted jurisdiction to review disciplinary actions of civil service employees in order to protect civil service employees from politically partisan mistreatment or other arbitrary action inconsistent with the merit principle embodied in article VII. . . . [¶] PERB, on the other hand, has been given a somewhat more specialized and more focused task: to protect both employees and the state employer from violations of the organizational and collective bargaining rights guaranteed by SEERA. *Although disciplinary actions taken in violation of SEERA would transgress the merit principle as well, the Legislature evidently thought it important to assign the task of investigating potential violations of SEERA to an agency which possesses and can further develop specialized expertise in the labor relations field. . . ."* (*Id.*, at pp. 197-198, italics added.)

Accordingly, we held that the Legislature was not precluded from establishing other agencies, besides the State Personnel Board, "whose specialized watchdog functions might also, in some cases, involve the consideration of . . . disciplinary action." (*Id.*, at pp. 198-199.) The first among the watchdog agencies discussed in this regard was the FEHC, appellant here. We stated that in this instance, and in others, "the Legislature has deemed it appropriate to vest a specialized agency, which has familiarity in a particular area, with the authority to protect employees who are discharged or otherwise disciplined for exercising important rights in the agency's field of expertise. *We should be reluctant to construe article VII, section 3, subdivision (a) in a manner that would deprive all state civil service employees of the important safeguards afforded by these specialized agencies."* (*Id.*, at p. 199, italics added.)

The implications of our reasoning in *Pacific Legal Foundation* for the present case are clear. Just as the "merit principle" is not infringed upon

by the institution of collective bargaining, so it is unharmed by the watchdog functions of the fair employment agencies. Indeed, the principle of nondiscrimination reinforces the merit principle. The FEHA guarantees that non-merit factors such as race, sex, physical handicap, and the like, play no part in the appointment of civil service employees. As the Court of Appeal noted in *California State Employees' Assn.* v. *Williams* (1970) 7 Cal.App.3d 390, 399-400 [86 Cal.Rptr. 305], "[t]he civil service provision is only one of a number of devices for minimizing patronage and favoritism. Those practices take many forms. . . . *The Legislature is the creative and controlling element.*" (Italics added.)

As in *Pacific Legal Foundation,* our duty here is to harmonize the two statutory schemes in order to give each one maximum possible effect. The two agencies "are not in competition with each other; rather, each agency was established to serve a different, but not inconsistent, public purpose." (*Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 197.) We earlier noted that the purpose of the Civil Service Act is to ensure that appointments to state office are made not on the basis of patronage, but on the basis of merit, in order to preserve the economy and efficiency of state service; and that by contrast, the purpose of the FEHA is to provide effective remedies for the vindication of constitutionally recognized civil rights and to eliminate discriminatory practices that violate those rights. Just as in the case of SEERA, the FEHA creates areas of overlapping jurisdiction between the Board and other agencies. With SEERA, the overlap occurs in the power to inquire whether a disciplinary action was undertaken "for cause" or out of impermissible antiunion motivation. In the case of the FEHA, the overlap occurs in the inquiry whether an employment criterion discriminates against a protected class, such as the physically handicapped.[16]

We expressly stated in *Pacific Legal Foundation* that the Legislature is not restrained by article VII from establishing other agencies, *such as those established by the FEHA,* whose specialized watchdog functions might involve consideration of matters also within the purview of the Board. (See *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 199.) We now reaffirm our conclusion that "[w]e should be reluctant to construe article VII, section 3, subdivision (a) in a manner that would deprive all state civil service employees of the important safeguards afforded by these specialized agencies." (*Ibid.*)

---

[16]We note that DFEH and FEHC would also have concurrent jurisdiction with the Board to inquire whether a disciplinary action against a state employee constituted discrimination on the basis of a protected class status such as race, sex, national origin, age, and the like. (See *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at pp. 198-199.)

The Board claims that its authority over examinations and appointments in the civil service is of constitutional, not statutory, origin.[17] While the principle of selection by competitive examination is enshrined in the Constitution in article VII, section 1, subdivision (b), that section creates no powers in the Board. Rather, the Board's constitutional powers derive from section 3, subdivision (a) of that article, which includes no mention of examinations. (See *ante* at p. 435.)[18] The Board argues that its power over examinations is inextricably intertwined with its constitutional mandate in section 3 to "prescribe classifications," and that therefore the Legislature is prohibited by the Constitution from creating an agency with the power to review the Board's examinations.

Again, the Board's argument fails in the face of our reasoning in *Pacific Legal Foundation*. There we rejected a similar claim that the power to set salaries was an integral part of the power to "prescribe classifications," and was therefore constitutionally beyond the reach of the Legislature. Furthermore, our holding in *Pacific Legal Foundation* makes the argument over statutory or constitutional origins of little importance in this context. In neither case is the Board's jurisdiction exclusive, and in both cases accommodation with other agencies is required.

The Board attempts to distinguish *Pacific Legal Foundation* on three grounds, none of which is persuasive. The Board's first claim is drawn from a statement in *Pacific Legal Foundation* where we discussed the Legislature's careful drafting of SEERA to minimize any potential conflict with the "merit principle" of employment. As an example of the Legislature's draft-

---

[17]The provisions of the Civil Service Act relating to examinations are codified at sections 18930-18941, and those relating to appointments at sections 19050-19230.

[18]By contrast, the powers vested in the Colorado Civil Service Commission by that state's constitution are much more extensive. Thus, the Board's reliance on *Colorado* v. *Colorado Civil Rights Commission* (1974) 185 Colo. 42 [521 P.2d 908]—in which the civil rights commission was held to have no jurisdiction over an allegedly discriminatory dismissal from the civil service—is misplaced.

Article XII, section 13 of the Colorado Constitution (since amended) read as follows: "Persons in the classified service [of the state] shall hold their respective positions during efficient service and shall be graded and compensated according to standards of efficient service which shall be the same for all persons having like duties. *They shall be removed or discharged only upon written charges,* which may be filed by the head of a department or by any citizen of the state, for failure to comply with such standards, or for the good of the service, *to be finally and promptly determined by the commission* upon inquiry and after an opportunity to be heard. . . .

". . . The making and enforcement of rules to carry out the purpose of this amendment and of the laws enacted in pursuance hereof, the alteration and recission of such rules, the conduct of all competitive tests, *the determination of all removal or disciplinary cases,* the standardization of all positions, the determination of standards of efficient service and the determination of the grades of all positions in the classified service *shall be vested in the commission.*" (Italics added.)

ing, we cited the fact that under SEERA, no memorandum of understanding (i.e., agreement emerging from collective bargaining) *could, without legislative approval, supersede statutes relating to classification, examination, appointment, or promotion*—areas in which a potential conflict with the merit principle would be most likely to occur.[19]

The Board cites this statement as support for the proposition that its powers in the area of examination and appointment are exclusive, as distinguished from its powers to review disciplinary actions, which we held in *Pacific Legal Foundation* were not exclusive. However, the cited provision of SEERA has no bearing on this case. Here we are dealing with a statute (the FEHA) duly enacted by the Legislature, not a product of collective bargaining purporting to supersede statutes without legislative approval. Furthermore, we held above that the Board's power over examinations, like its power to review disciplinary actions, is *not* exclusive. DFEH and FEHC have jurisdiction concurrently with the Board over both "disciplinary actions" and "examinations," to insure that neither activity is tainted by discrimination on the basis of a protected class status.

The Board's second claimed distinction is similarly unpersuasive. In *Pacific Legal Foundation* we found that accommodation between PERB's and the Board's respective jurisdictions was desirable in part because "each agency was established to serve a *different,* but not inconsistent, public purpose." (*Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 197, italics added.) The Board claims that, by contrast, the purposes of the FEHA are "identical" to those of the Civil Service Act, not different from them. We have already stated our view that the two acts serve distinct, though not inconsistent, public purposes. (See *ante,* p. 431.) The fact that both acts prohibit discrimination in employment (as both acts in *Pacific Legal Foundation* prohibited discipline based on antiunion discrimination) does not make the existence of the two statutory schemes a "duplicative, disgraceful waste of public funds," as the Board claims. Our discussion in part I of this opinion indicates our view that the FEHA provides rights and remedies beyond those afforded in Board proceedings.

The Board's third purported distinction concerns the fact that in *Pacific Legal Foundation*—where petitioners challenged SEERA as unconstitutional on its face—no *actual conflict* existed between PERB and the Board. Here,

---

[19]Our full statement was as follows: "[I]n designating the statutes that may be superseded by a memorandum of understanding without legislative approval, the Legislature excluded those statutes relating to classification, examination, appointment, or promotion, areas in which a potential conflict with the merit principle of employment would be most likely to occur." (*Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 185.)

it is claimed, a real controversy exists because the FEHC was fully prepared to adjudicate real parties' claims until the Board obtained injunctive relief. We first note that in *Pacific Legal Foundation* we discussed two types of conflict that might arise between the Board and other agencies. One is where an action by another agency actually encroaches on the merit principle, as where hiring or promotion is determined on the basis of political partisanship. (See *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 185.) The second type of conflict is the one claimed here, where two agencies arrive at conflicting adjudications concerning the same set of facts. (*Id.,* at p. 200.)

The Board correctly notes that the FEHC was *prepared* to adjudicate the cases of the real parties in interest, but had not begun to do so. Therefore, we are not confronted with a situation of inconsistent adjudications. Once the injunction against adjudication is lifted, the FEHC could well rule in the Board's favor and against the claims of the real parties in interest.

Nevertheless, DFEH has issued an accusation charging that the Board's medical criteria for the position of traffic officer cadet violate applicable statutes and regulations prohibiting discrimination on the basis of physical handicap. Should the parties continue to be unable to reach an administrative accommodation, and should the FEHC sustain the DFEH's accusation of discrimination, the conflict would have to be resolved "by sensitive application of evolving judicial principles," as noted by this court in *Pacific Legal Foundation.*[20] The opinions we cited there present several possible approaches to the problem of concurrent jurisdiction, but we have no occasion to resolve that problem here since no conflicting adjudications are

---

[20]In that case, we stated: "Because no actual jurisdictional conflict between PERB and the State Personnel Board confronts us in this proceeding, we have no occasion to speculate on how some hypothetical dispute that might be presented for decision in the future should properly be resolved. As numerous authorities in other jurisdictions make clear, however, any conflicts which may arise in this area can be resolved either by administrative accommodation between the two agencies themselves or, failing that, by sensitive application of evolving judicial principles. (See, e.g., *Town of Dedham* v. *Labor Relations Comm., supra,* [Mass. S. Jud. Ct. 1974] 312 N.Ed.2d 548; *City of Hackensack* v. *Winner, supra,* [(1980) 82 N.J. 1] 410 A.2d 1146, *id.* at pp. 1166-1168 (conc. opn. by Pashman, J.), *id.* at pp. 1171-1173 (conc. and dis. opn. of Schreiber, J.); *City of Albany* v. *Public Employment Rel. Bd.* (1977) 57 App.Div.2d 374 [395 N.Y.S.2d 502]; cf. *Alexander* v. *Gardner-Denver Co.* (1974) 415 U.S. 36, 47-60 [39 L.Ed.2d 147, 157-165, 94 S.Ct. 1011]; *Tipler* v. *E.I. duPont de Nemours and Co.* (6th Cir. 1971) 443 F.2d 125, 128-129.)" (*Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at p. 200, fn. omitted.)

Of the above cited cases, *Dedham, Hackensack* and *Albany* concern conflicts between a civil service agency and a public employment relations board. The other two cited cases, *Alexander* and *Tipler,* involve concurrent jurisdiction of employment discrimination claims cognizable under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), the federal civil rights statute most closely analogous to the FEHA.

presented. ▌ We note, however, that the FEHC should be sensitive to the constitutional functions of the Board and should take into account any prior determinations of the Board when a matter previously decided by that body comes before the FEHC. The degree of deference that should be given to the Board's findings and conclusions will depend on the individual case. If the FEHC is satisfied that a particular issue presented to it was sufficiently explored and decided by the Board, then it may, in comity, bar relitigation of the issue. As a general matter, however, preclusion of adjudication at the outset would be inappropriate, because the issues presented to the Board and the FEHC will not often be identical and because the statutory schemes under which they operate serve different public policies.

In *Alexander* v. *Gardner-Denver Co., supra,* 415 U.S. 36 [39 L.Ed.2d 147, 94 S.Ct. 1011], an employer who was charged with race discrimination under title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) argued that the doctrine of election of remedies precluded such litigation where the same claim had been the subject of a prior contractual arbitration. (The collective bargaining agreement, like title VII, prohibited discrimination in employment on the basis of race.) The United States Supreme Court responded: "That doctrine [election of remedies], which refers to situations where an individual pursues remedies that are legally or factually inconsistent, has no application in the present context. In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective-bargaining agreement. By contrast, in filing a lawsuit under Title VII, an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in their respectively appropriate forums." (*Id.,* at pp. 49-50 [39 L.Ed.2d at p. 159], fn. omitted.)

Similarly, in *Town of Dedham* v. *Labor Relations Commission, supra,* 365 Mass. 392 [312 N.E.2d 548], the Supreme Judicial Court of Massachusetts faced conflicting adjudications by the civil service commission and the labor relations commission (analogous to our PERB), and stated: "[T]he Labor Relations Commission operates on a basis different from that of the Civil Service Commission. The latter agency vindicates a private right of the complaining employee (although of course the right is given in part to serve a public purpose). The former agency, although stirred to action by a private complaint, acts when it chooses to do so in its own name as a public prosecutor to test a public right, with the possible remedy not limited to the grievance of the particular employee." (*Town of Dedham* v. *Labor Relations Commission, supra,* 312 N.E.2d at p. 558.) The court then noted that

"[t]his difference in the operations of the agencies is among the reasons why an employee's application to either agency should not be considered an 'election' against or a 'waiver' of resort to each other." (*Id.*, at p. 558, fn. 22.)

Likewise in the present case, the two statutes at issue serve different public policies, as explained above. (See *ante* pp. 431-432.) Moreover, an employee complaining before the Board is asserting a private right, while the DFEH is "a public prosecutor [] test[ing] a public right." (*Town of Dedham* v. *Labor Relations Commission, supra,* 312 N.E.2d at p. 558.) The employee's choice to assert the former should not bar litigation of the latter right.

### CONCLUSION

 In conclusion, we restate the view of article VII expressed by us in *Pacific Legal Foundation* and again in this case: The fact that the voters of California in 1934 thought it wise to place the "merit principle" of state employment out of the hands of the Legislature by enshrining it in the Constitution, does not mean that those voters intended to put public employees outside the reach of laws designed for their benefit to afford them rights enjoyed by private employees.

The judgment is reversed. We reserve jurisdiction for the purpose of considering the request for an award of attorney's fees by real parties in interest.

Bird, C. J., and Kaus, J., concurred.

**GRODIN, J.—** I agree that the trial court erred in enjoining the Department of Fair Employment and Housing (DFEH) and the Fair Employment and Housing Commission (FEHC) from processing claims of discrimination by civil service employees, and therefore concur in the judgment. The Fair Employment and Housing Act (FEHA) reflects a legislative intent to afford civil service employees the benefits of that statute and, like the majority, I believe that intent can be effectuated by a process of accommodation that will not infringe upon the constitutional functions of the State Personnel Board (Board).

I write separately for two reasons. The first is to address an apparent point of disagreement between the majority opinion and that of Justice Lucas concerning whether a civil service employee who unsuccessfully invokes the procedures of the Board through a claim of discrimination may thereafter utilize the procedures of the FEHA as well. The majority imply that he may do so, notwithstanding a prior adverse determination by the Board

(*ante,* at p. 443), while Justice Lucas in his dissent assails such a procedure on the ground that it gives the employee "an undeserved second bite at the administrative apple" (*post,* at p. 446).

In my view, attempted resolution of this question in this case is both unnecessary and unwise. It is unnecessary because, as the majority observe (*ante,* at pp. 426-427), the Board treated the complaints filed by real parties in interest, not as complaints of discrimination on the basis of physical handicap, but as "medical appeals." Thus, the Board never came to grips with, much less adjudicated, the claims which real parties in interest thereafter presented to the FEHC. What we have in hand is not a twice bitten apple but (to squeeze the metaphor) an apple and an orange.

Resolution of the election of remedies question in this case would be particularly unwise in light of the recent amendments to the Civil Service Act giving the Board remedial authority comparable to that possessed by the FEHC. (Stats. 1984, ch. 1754, § 6; § 19702, subd. (e).) (See *ante,* at p. 434, fn. 13.) The relationship of the two agencies under the amended statutory scheme involves issues best left for another day.

My second reason for writing separately is to focus upon a related aspect of this case which, in my view, deserves special emphasis. This is not a case of individual discrimination, in which the question is whether the employer acted with discriminatory motive in making a particular personnel decision. (Cf. *McDonnell Douglas Corp.* v. *Green* (1973) 411 U.S. 792 [36 L.Ed.2d 668, 93 S.Ct. 1817].) Real parties in interest attack the hiring criteria generally applicable to a classification in which they seek employment; and the basis of their attack is that the criteria, though neutral on their face, in fact operate to exclude a group protected against discrimination by the FEHA, and are not sufficiently job related to justify that discriminatory impact. (See *Griggs* v. *Duke Power Co.* (1971) 401 U.S. 424 [28 L.Ed.2d 158, 91 S.Ct. 849].)

In the first type of case, the Board will not be called upon to take any action unless its jurisdiction has been specifically invoked. If its jurisdiction is invoked, its function (like that of the FEHC) will be to investigate a claim of discrimination by some other agency. In the second type of case, it is the Board itself that is responsible for the employment criteria which are in dispute. By approving those criteria, the Board has already determined, at least by implication, that they are job related. Exercise of FEHC jurisdiction in the second type of case thus poses, inevitably, a greater potential for conflict.

Nonetheless, I agree with the majority that the mere potential for conflict is not enough to preclude FEHC jurisdiction, and that actual conflict can be avoided by appropriate accommodation, both on the part of the FEHC and, in the unlikely event that the dispute ends in litigation, by the reviewing court. In the latter event difficult questions may arise as to the weight to be given findings by the FEHC insofar as they are adverse to determinations by the Board. That is a bridge that need not be crossed in anticipation, however, and, as Justice Mosk suggests, perhaps not at all.

Gilbert (R. L.), J.,* concurred.

**LUCAS, J.**—I respectfully dissent.

I appreciate and fully share the majority's worthy concern that adequate remedies be provided to all persons claiming that they have been denied employment because of improper discrimination. But to provide state civil service employees with *two* administrative forums to air their complaints is excessive and unwise, and unnecessarily strains the state's already over-loaded administrative machinery designed to resolve such disputes.

The State Personnel Board is constitutionally vested with exclusive juris-diction over the examination and selection of state civil service personnel. (Cal. Const., art. VII.) Enabling legislation within the Civil Service Act provides assurance that civil service hirings are based on merit (see Gov. Code, § 18500; further statutory references are to this code unless otherwise indicated), and precludes discrimination based on age, sex, race, religion, physical handicap and other specified types of discrimination (§ 19700 et seq.). Civil service applicants who feel their rights have been abridged may initiate a complaint, triggering conciliation efforts and, if necessary, formal hearings. (Cal. Admin. Code, tit. 2, §§ 51, 547 et seq.) Judicial review of an adverse board decision is available. (§ 19630 et seq.; Code Civ. Proc., §§ 1085, 1094.5.)

To allow rejected civil service applicants the opportunity to pursue this elaborate review procedure *plus,* if unsuccessful, the luxury of initiating an entirely new administrative proceeding before the state Fair Employment and Housing Commission, based on identical claims of employment dis-crimination, gives these applicants an undeserved second bite at the admin-istrative apple. Such a holding can only serve to encourage a multiplicity of administrative proceedings by discontented employment applicants hoping to find some friendly forum to hear their grievances.

*Assigned by the Chairperson of the Judicial Council.

The correct constitutional and statutory analysis dispositive of this case was set forth in the now vacated Court of Appeal opinion authored by Presiding Justice Puglia. I adopt the following portions of that opinion to supplement this dissent:

"It is apparent that both the Board and the appellants [Fair Employment and Housing Commission and Department of Fair Employment and Housing], under their respective governing statutes, are charged with enforcing virtually identical substantive standards with respect to discrimination against the physically handicapped. The Civil Service Act prohibits employment discrimination against the physically handicapped unless the particular handicap is 'job related.' (§ 19702.) The FEHA prohibits employment discrimination against the physically handicapped unless justified by a 'bona fide occupational qualification' (§ 12940). As we see it, a 'bona fide occupational qualification' is virtually synonymous with the 'job related' standard administered by the Board. Even if the categorical synonymity were not clear, the FEHA further clarifies the essential congruity of the two schemes by providing that an employer may *refuse* to hire persons with medical or physical handicaps who are unable to or cannot safely perform the duties of the job. (§ 12940.)

"It is true as appellants point out that the appeals to the Board of applicants Pade and Williams were handled as medical rather than physical handicap discrimination appeals. In medical appeals the issues are limited to the existence of the physical condition in question and whether that condition meets the standards of disqualification for employment under the Board's medical standards for the particular job classification. Appellants represent that their procedures focus directly on the discrimination issue by affording a physically handicapped complainant rejected for employment the opportunity to show that he is in fact able to perform the job in question notwithstanding his disability; furthermore appellants' hearing assertedly would address the ability of the employer reasonably to accommodate to the complainants' handicap. However, appellants ignore the availability of a virtually identical remedy in appeals to the Board. By providing for waiver of a medical employment standard 'subject to proper placement' within the class, the Board is prepared to give individualized consideration to applicants who are unable to meet the minimum standards of physical fitness preliminarily required for a particular classified position, but who can demonstrate that 'such waiver would not affect the satisfactory performance of the duties assigned to the specific position' (see Cal. Admin. Code, tit. 2, § 172.1 . . . .)

"Appellants rejoin that the Board did not permit applicants the opportunity to show they could actually perform the duties of a traffic officer. How-

ever, there is neither showing nor contention that applicants framed their appeals to the Board as other than medical appeals, i.e., as complaints of discrimination on account of color blindness (§ 19701) or physical handicap (§ 19702), or that they specifically sought waivers of physical or medical standards subject to proper placement within the relevant job classification. (Cal. Admin. Code, tit. 2, § 172.1.) It is incumbent upon the dissatisfied applicant who seeks relief from the Board clearly and specifically to frame the issues on appeal: 'A complaint of discrimination which cannot be resolved by the appointing power . . . shall be filed with the Personnel Board as an appeal . . . . [¶] Each complaint must be in writing and state clearly the facts upon which it is based, and the relief requested in sufficient detail for the reviewing authority to understand the nature of the complaint and who is involved.' (Cal. Admin. Code, tit. 2, § 547.1.)

"If the Board failed or refused to hear or erroneously decided properly tendered issues of discrimination or waiver, applicants' remedy is to seek judicial review of the administrative proceeding (§ 19630 et seq.; Code Civ. Proc., § 1094.5). If claims of discrimination or waiver were not tendered in accordance with the rules of practice before the Board, applicants have no justiciable cause to complain of denial of substantive rights of which, given the opportunity, they failed to avail themselves. [Fn. omitted.]

"Appellants contend they are uniquely empowered to exercise certain remedial powers upon a finding of discrimination which are not given to the Board. Specifically appellants can require an offending employer 'to cease and desist from . . . [a discriminatory] practice and to take such action, including, but not limited to, hiring, reinstatement or upgrading of employees, with or without back pay, as in the judgment of the commission, will effect the purposes of [the FEHA] . . . .' (§ 12970.) It cannot be seriously contended, however, that the Board in the present circumstances lacks the authority under the Civil Service Act to compel an employer to refrain from discriminatory employment practices and to cause the hiring of a particular applicant under appropriate circumstances.

"Undaunted, appellants direct our attention to the availability of a right of private action to an aggrieved person under the FEHA (§ 12965, subd. (b)), pointing out there is no cognate judicial remedy under the Civil Service Act. However, appellants fail to mention that the judicial remedy as provided by the FEHA is permitted only in default of agency action where the Department does not file an accusation. In proceedings before the Board, it is the aggrieved person, not the agency, who must initiate formal proceedings by filing a written complaint (Cal. Admin. Code, tit. 2, §§ 63, 547.1). Thus availability of a judicial remedy in the first instance is not only un-

necessary, it would be useless since such relief at that stage of proceedings would be precluded by the principle requiring exhaustion of administrative remedies as a prerequisite to judicial review.

"We conclude the administrative procedures available under the Civil Service Act guarantee full and fair opportunity to challenge individual employment decisions with respect to the medically or physically handicapped. Appellants insist, however, that the procedural protections afforded claimants under the FEHA are qualitatively superior to the relatively more informal procedures of the Board. However that may be, we shall not speculate as to the 'better' of the two administrative procedures given that those of the Board comport with the requirements of due process of law. (See *French v. Rishell* (1953) 40 Cal.2d 477, 481 [254 P.2d 26]; *Kremer* v. *Chemical Construction Corp.* (1982) 461 U.S. 480-481 [72 L.Ed.2d 262, 279-280, 102 S.Ct. 1883]; *City of Hackensack* v. *Winner* [(1980) 82 N.J. 1] 410 A.2d [1146] at p. 1163; *Mitchell* v. *National Broadcasting Co.* (1977) 553 F.2d 265, 271.)

"Appellants infer a legislative intent to invest them with concurrent jurisdiction with regard to the subject of the present controversy because of a requirement that the Board, as an employer within the scope of FEHA, maintain and preserve personnel application files for a period of one year (§ 12946) and submit to the Commission affirmative action plans and ethnic statistical data. (§ 19702.5.) Neither duty, however, specifically relates to information regarding the physically handicapped. In fact section 19702.5 refers to data relative to sex, age, and ethnic origin without express mention of physical handicap. These record-keeping requirements, standing alone, do not reflect a legislative intent to dilute the Board's jurisdiction over employment discrimination against the physically handicapped.

"Appellants argue that their concurrent jurisdiction here is supported by the Board's own admissions and past practice. [Fn. omitted.] Although subject-matter jurisdiction may never be waived (*Burris* v. *Superior Court* (1974) 43 Cal.App.3d 530, 537 [117 Cal.Rptr. 898]; *Unruh* v. *Truck Insurance Exchange* (1972) 7 Cal.3d 616, 622 [102 Cal.Rptr. 815, 498 P.2d 1063]) and although final responsibility for the interpretation of the law rests with the courts, past and contemporaneous pronouncements and interpretations by administrative officials of their legislative or constitutional authority are accorded considerable weight. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 681 [94 Cal.Rptr. 279, 483 P.2d 1231]; *City of Los Angeles* v. *Public Utilities Com.* (1975) 15 Cal.3d 680, 696 [125 Cal.Rptr. 779, 542 P.2d 1371]; see also *Pacific Legal Foundation* v. *Brown* [(1981)] 29 Cal.3d [168] at pp. 191-192 [172 Cal.Rptr. 487, 624 P.2d 1215].) Nonetheless, these

prior statements and practices of the Board are not conclusive of the jurisdictional controversy. The deposition testimony of Board members indicates at most a 20-year joint effort, since the adoption of the predecessor to the FEHA, of the Board and appellants to utilize all the state's resources to eradicate discrimination in employment. Over the years, the Board generally has cooperated with the Commission and Department in cases involving allegations of discrimination in state civil service employment and has viewed the Department's investigatory activities as supplementary to its own. Yet the Board never has expressed any position with regard to concurrent jurisdiction in the specific area of discrimination against the physically handicapped despite the fact that a prohibition against such discrimination was added by statute in 1973. (Stats. 1973, ch. 1189, § 6.) Furthermore, in practice, the Department has admitted in discovery that it has never served the Board with accusations of employment discrimination prior to the three accusations filed on behalf of the applicants herein. Nor have appellants ever issued any finding that the Board has engaged in discrimination.

"We are satisfied that the Board has the greater expertise with respect to determination whether a disqualifying physical condition is job related or whether an individual can satisfactorily perform the duties of a particular job notwithstanding an otherwise disqualifying physical disability. In relation to appellants, the Board's superior expertise extends across the entire realm of civil service classifications including specifically the position of traffic officer. Virtually every job requires some minimum standard of physical fitness or, stated in another way, the absence of that level of physical incapacity which would preclude adequate performance of the work. While employment standards may not lawfully take into account individual characteristics such as race, color, or national origin, establishment of a certain minimum level of physical capacity is essential in the formulation of legitimate job standards. In the latter context, discrimination occurs only when a disqualifying physical condition is not job related (a bona fide occupational qualification) and therefore would not render an applicant unable to perform the duties of the position adequately and safely. Thus the test for discrimination against the physically handicapped is inherently and exclusively involved with the setting of minimum standards of capacity to perform and with ability actually to perform in particular job classifications. These matters are uniquely within the competence of the Board and not of the appellants. Specifically to the point, the Board has the expertise to assess the duties of a state traffic officer, prescribe the minimum qualifications required safely and effectively to perform those duties and determine ability so to perform in individual cases. The appellants have neither responsibility nor expertise in this area.

"In order to discharge its constitutional obligation to classify all positions in the civil service according to comparability (Cal. Const., art. VII, § 3, subd. (a)), the Board must evaluate the duties and responsibilities of and determine the levels of fitness necessary to performance in each class of position (§§ 18500, 18801); the Board must establish minimum standards of fitness and qualification for each position (§ 18931). In order to insure appointments are governed by the merit principle, the Board must examine applicants to determine their qualifications, fitness and ability to perform the duties of the class in which they seek employment (art. VII, § 1, subd. (b); § 18930). The examination may, where appropriate, test the physical fitness of the applicant (*ibid.*) and the Board may refuse to certify for appointment anyone who is so disabled as to be rendered unfit to perform in the class to which he seeks appointment (§ 18935, subd. (c)).

"Development of job performance standards and assessment of an applicant's ability to perform a civil service job are under the Constitution exclusively within the province of the Board. They are inextricably intertwined with the Board's exclusive constitutional prerogative to prescribe classifications (*Stockton* v. *Department of Employment* (1944) 25 Cal.2d 264, 272 [153 Cal.Rptr. 741]; *Noce* v. *Department of Finance* (1941) 45 Cal.App.2d 5, 11 [113 P.2d 716]) and its constitutional authority over appointment and examination all of which are at the heart of its constitutional power to administer the merit principle (*Pacific Legal Foundation, supra,* at pp. 183-184, 187, 192-195). Eminently a part of these powers is the authority to determine whether an applicant possesses minimum physical capacity necessary to the demands of the particular employment, either by application of general standards of fitness or by individualized physical testing against job performance requirements.

"Relying on a hypothetical example in *Pacific Legal Foundation* v. *Brown, supra,* 29 Cal.3d at page 185, appellants claim that the Board's constitutional jurisdiction is solely confined to vindicating the merit principle against political influence. Such a construction is unduly narrow, as the merit principle also necessarily contemplates vindication against corruption, disloyalty, subversion, and commonplace inefficiency, ineptitude and indolence in the classified service. (See *Pacific Legal Foundation, supra,* at p. 182.) Whatever the precise scope of the merit principle, it cannot be defined simply in terms of a negative standard, i.e., freedom from political influences, if it is to be administered by other than subjective criteria. The merit principle is the antithesis of political influence and to administer its acknowledged constitutional powers to insulate state employment from political influence, the Board must devise a set of objective criteria which are intrinsically job related, thus defining and giving substantive content to the

merit principle. Standards of physical fitness and ability physically to perform are essential to the formulation of such objective criteria just as obviously as race, color, party affiliation or consanguinity with high officials are not. Imposition of appellants' standards applicable to the physically handicapped would, to that extent, inevitably undermine the uniform and objective application of the merit principle in state employment, the stewardship of which is confided exclusively by the Constitution to the Board.

"The Board and appellants seek to occupy the same jurisdictional space in the context of a concrete controversy. Appellants claim the right to 'examine the qualifications [for employment] set by the Board to determine whether they are bona fide, and then give handicapped applicants the opportunity to demonstrate an ability to perform bona fide requirements.' The appellants' assertion of jurisdiction over these matters poses a present total and fatal conflict with the Board's constitutional powers of classification, examination and appointment (*Pacific Legal Foundation, supra,* at p. 181). Where such a conflict exists, the constitutionally derived power of the Board must prevail. (See *Waters* v. *Pacific Telephone Co.* (1974) 12 Cal.3d 1, 11 [114 Cal.Rptr. 753, 523 P.2d 1161].)"

I would affirm the judgment enjoining appellants from further prosecuting the accusations filed by real parties.

**MOSK, J.**—I dissent.

Since I do not believe these three real parties in interest are suffering discrimination on the basis of physical handicap within the meaning of Government Code section 12940, I do not reach the issue to which the majority devote their lengthy discussion.

Without repeating the analysis of my dissent in *American National Ins. Co.* v. *Fair Employment & Housing Com.* (1982) 32 Cal.3d 603, 611 [186 Cal.Rptr. 345, 651 P.2d 1151], I adhere to the views therein expressed. None of the three applicants for state employment in the instant case qualifies as a person with a "physical handicap" as defined by the Legislature. (Gov. Code, § 12926, subd. (h).) Thus there was no merit to their claim of discrimination by virtue of the so-called handicap. Because their claim has no validity, the conflict between the State Personnel Board and the Fair Employment and Housing Commission over their employment contention is purely illusory.

Without unduly editorializing, it appears to me unseemly for two state agencies to engage in protracted litigation through the entire judicial system

over protection or extension of their turf. Certainly each has enough legitimate problems with which to be concerned without entering into an armwrestling contest with another agency over jurisdiction. In a well-ordered administrative organization, this type of controversy would be settled by mutual agreement.

I would affirm the judgment, though not for the reasons given.

On September 19, 1985, the judgment was modified to read as printed above.