[No. S119498. Dec. 1, 2005.]

STATE PERSONNEL BOARD, Plaintiff and Respondent, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION et al., Defendants
and Appellants.
ASSOCIATION OF CALIFORNIA STATE ATTORNEYS AND
ADMINISTRATIVE LAW JUDGES et al., Plaintiffs and Respondents v.
DEPARTMENT OF PERSONNEL ADMINISTRATION et al., Defendants
and Appellants.
STATE PERSONNEL BOARD, Plaintiff and Appellant, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION et al., Defendants
and Respondents.

514

COUNSEL

Elise S. Rose, Dorothy Bacskai Egel; Kronick, Moskovitz, Tiedemann & Girard and Susan R. Denious for Plaintiff and Appellant and for Plaintiff and Respondent State Personnel Board.

Howard L. Schwartz, K. William Curtis, Marguerite D. Seabourn and Linda Diane Buzzini for Defendant and Appellant and for Defendant and Respondent Department of Personnel Administration.

Anne M. Giese and Mark DeBoer for Defendant and Appellant and for Defendant and Respondent California State Employees Association.

Carroll, Burdick & McDonough, Ronald Yank, David M. Rice and Gregg McLean Adam for Defendant and Appellant and for Defendant and Respondent Department of Forestry Firefighters.

VanBourg, Weinberg, Roger & Rosenfeld, Weinberg, Roger & Rosenfeld, William A. Sokol, Vincent A. Harrington, M. Suzanne Murphy and Matthew J. Gauger for Defendant and Appellant and for Defendant and Respondent International Union of Operating Engineers.

Norman Hill and Wendy Breckon for Defendant and Appellant and for Defendant and Respondent Department of Forestry and Fire Protection.

Bill Lockyer, Attorney General, David S. Chaney, Assistant Attorney General, Damon M. Connolly, Miguel A. Neri, Jacob Appelsmith, Alicia M. B. Fowler and Michelle Littlewood, Deputy Attorneys General, as Amici Curiae on behalf of Defendant and Appellant and Defendant and Respondent Department of Personnel Administration.

Anne M. Giese; Katzenbach and Khtikian and Christopher W. Katzenbach for California State Employees Association as Amicus Curiae on behalf of Defendants and Appellants and Defendants and Respondents Department of Personnel Administration, Department of Forestry Firefighters and International Union of Operating Engineers.

Law Office of Steven B. Bassoff, Steven B. Bassoff; Eisen & Johnston Law Corporation, Jay-Allen Eisen Law Corporation, Jay-Allen Eisen, Marian M. Johnston and C. Athena Rousos for Plaintiffs and Respondents Association of California State Attorneys and Administrative Law Judges et al.

Elise S. Rose, Dorothy Bacskai Egel; Kronick, Moskovitz, Tiedemann & Girard and Susan R. Denious for State Personnel Board as Amicus Curiae on behalf of Plaintiffs and Respondents Association of California State Attorneys and Administrative Law Judges et al.

## OPINION

**KENNARD, J.—** ■ The memoranda of understanding (MOU's) of four state employee bargaining units[1] allow covered employees to challenge disciplinary actions either by seeking review before the State Personnel Board or by pursuing an alternative grievance/arbitration procedure that bypasses the State Personnel Board. The Legislature ratified the grievance/arbitration procedures set forth in the four MOU's by enacting implementing legislation. (See Gov. Code, § 18670, subds. (c), (d) & (e); further undesignated statutory references are to the Government Code.)

Does this bypass of the State Personnel Board violate article VII, section 3 of the California Constitution, which provides that the State Personnel Board "shall . . . review disciplinary actions" taken against state civil service employees? (Cal. Const., art. VII, § 3, subd. (a).) We conclude that it does.

### I.

#### A. *MOU's and Implementing Legislation*

##### 1. *Unit 8 (Firefighters)*

In 1998, the Department of Personnel Administration, which represents the Governor of California in labor negations with state employee unions, entered into an MOU with the Department of Forestry Firefighters (Firefighters' Union), the bargaining agent for Unit 8. That MOU (hereafter also referred to as the original Unit 8 MOU) sets forth a procedure by which a firefighter can challenge a disciplinary action. "Discipline" includes punitive dismissals, demotions, suspensions and pay reductions. Discipline can be "major" or

---

[1] The four bargaining units whose MOU's are before us are Units 8, 11, 12 and 13. Unit 8 is comprised of firefighters, Unit 11 of engineering and scientific technicians, Unit 12 of craft and maintenance workers, and Unit 13 of stationary engineers.

"minor." Major discipline is a suspension of more than five days or a pay reduction of more than 5 percent. Anything less than that is minor discipline.

The original Unit 8 MOU allows a firefighter to challenge a *major* disciplinary action in one of two ways: either by seeking review before the State Personnel Board, or by filing a grievance with a "Board of Adjustment" comprised of four members (two selected by the union and two by the employer). A *minor* disciplinary action can be challenged *only* through the Board of Adjustment grievance procedure; that board's decision is final and binding, subject only to confirmation as an arbitration award. (See Code Civ. Proc., § 1280 et seq.) If the Board of Adjustment fails to reach a decision, the disciplinary action would be sustained unless the employee or the Firefighters' Union sought arbitration. The arbitrator's decision would likewise be final and binding, and subject to judicial review only on the grounds set out in Code of Civil Procedure section 1286.2. These include "corruption, fraud, or other undue means" in procuring the award, and corruption or prejudicial misconduct by an arbitrator. (*Id.*, subd. (a)(1).)

To implement those provisions of the original Unit 8 MOU, the Legislature in 1998 added a new subdivision to section 18670. That statute in subdivision (a) provides for the State Personnel Board to "hold hearings and make investigations concerning *all* [civil service] matters." (§ 18670, subd. (a), italics added.) The 1998 amendment added subdivision (d), which applies "only to state employees in State Bargaining Unit 8"; it exempts Unit 8 employees from either "investigation or hearing" by the State Personnel Board. (§ 18670, subd. (d), as amended by Stats. 1998, ch. 1024, § 7, subsequently amended by Stats. 1999, ch. 446, § 6 and now designated subd. (c).)

In 2000, as the result of a lawsuit brought by the Association of California Attorneys and Administrative Law Judges (State Attorneys and ALJ's), the trial court issued a writ of mandate prohibiting the original Unit 8 MOU's alternative grievance/arbitration procedure allowing disciplined firefighters to bypass review by the State Personnel Board in favor of review before a different agency. In response, the Department of Personnel Administration and the Firefighters' Union amended the original Unit 8 MOU. The amended Unit 8 MOU, which we discuss below, states that the "modification shall be temporary" and that the MOU will revert to the original language "if the Court of Appeal reverses the Superior Court judgment."

The amended Unit 8 MOU gives firefighters subject to *minor* discipline the choice to seek review before the State Personnel Board or to bypass such review and instead pursue the grievance/arbitration process. (Under the original MOU, a firefighter wishing to challenge a minor discipline could do

so *only* through the grievance/arbitration procedure.) In addition, the amended Unit 8 MOU requires an arbitrator's decision to be submitted to the State Personnel Board to ensure that the decision does not conflict with "merit principles."

### 2. *Unit 11 (Engineering and Scientific Technicians)*

Effective July 1, 1999, the Department of Personnel Administration and the California State Employees Association (CSEA), as bargaining agent, entered into an MOU governing employees in Unit 11 (Unit 11 MOU), consisting of engineering and scientific technicians. Relevant here are the MOU provisions pertaining to mandatory substance abuse testing for those employees operating commercial vehicles. Employees disciplined or dismissed after receiving a positive test result during probation may challenge the action through a grievance and arbitration process, or if they choose, may seek review before the State Personnel Board.

To implement the Unit 11 MOU, the Legislature in 1999 added subdivision (d) to section 18670. (Stats. 1999, ch. 630, § 2.) Then in 2000 the Legislature amended section 18670 by adding another new subdivision (d) (Stats. 2000, ch. 402, § 5.) In relevant part, this new subdivision (d) states that covered employees who have been disciplined for "positive drug test results" and who have elected to challenge the discipline through the grievance and arbitration procedure "are not subject to either a[n] . . . investigation or a hearing" by the State Personnel Board. (See also § 19175, subds. (f) & (g); Code Civ. Proc., § 1094.5, subd. (k).)

### 3. *·Unit 12 (Craft and Maintenance Workers) and Unit 13 (Stationary Engineers)*

The MOU's between the Department of Personnel Administration and the Operating Engineers (the bargaining agent for employees in Units 12 and 13) date from September 21, 1999. As the exclusive means for resolving *minor* disciplinary actions, the MOU's for Units 12 and 13 (Unit 12 MOU, Unit 13 MOU) provide a grievance procedure before a four-member "Board of Adjustment," consisting of two members chosen by the Department of Personnel Administration and two by the union. For challenges to *major* disciplinary actions,[2] employees can elect between review before the State Personnel Board or a grievance filed with the Board of Adjustment. The

---

[2] Major discipline under the Unit 12 MOU consists of a suspension for more than three working days, a temporary demotion, or a reduction in pay of 5 percent for more than three months. The Unit 13 MOU defines major discipline as a "dismissal or suspension of more than three working days."

latter's decision is subject to arbitration, which, except for the grounds set out in Code of Civil Procedure section 1286.2 (see p. 517, *ante*), is final and binding.

To implement the MOU's for Units 12 and 13, the Legislature in 1999 amended section 18670 by adding subdivision (e), providing that these MOU's would control over conflicting provisions of section 18670 "without further legislative action."

### B. *The Lawsuits*

The MOU's discussed above and the statutory provisions implementing them were challenged in three separate lawsuits. The first lawsuit was filed by the State Personnel Board on December 18, 1998, against the Department of Personnel Administration and the Firefighters' Union; it sought a writ of mandate to prohibit enforcement of the disciplinary review provisions in the original Unit 8 MOU pertaining to firefighters. The trial court dismissed the case, ruling that the State Personnel Board lacked standing. The State Personnel Board appealed.

The second lawsuit was brought on February 8, 1999, by the State Attorneys and ALJ's and a taxpayer against the Department of Personnel Administration and the Firefighters' Union. Like the earlier lawsuit brought by the State Personnel Board, this second suit challenged the original Unit 8 MOU covering firefighters and sought the same relief.

The third lawsuit, by the State Personnel Board against the Department of Personnel Administration and two employee unions (the CSEA, as bargaining agent for Unit 11, and the Operating Engineers, as bargaining agent for Units 12 and 13), was filed on January 25, 2001 and challenged the disciplinary review provisions in the MOU's governing Units 11, 12, and 13.

In the second and third lawsuits, the trial court issued a peremptory writ of mandate prohibiting enforcement of the disciplinary review provisions allowing bypass of review by the State Personnel Board in favor of filing a grievance with a four-member Board of Adjustment whose decision would be subject to arbitration. The Department of Personnel Administration and the employee unions appealed.

The Court of Appeal consolidated the three appeals. Disagreeing with the trial court in the first lawsuit, the Court of Appeal concluded the State Personnel Board had standing to challenge the MOU's and the implementing legislation. It also held that in allowing employees to challenge a disciplinary action through a grievance/arbitration process instead of seeking review

before the State Personnel Board, the MOU's (including the amended Unit 8 MOU governing firefighters) and the implementing legislation violated article VII, section 3, subdivision (a) of the California Constitution by infringing upon the State Personnel Board's authority to "review disciplinary actions" taken against state civil service employees. We granted review of this constitutional issue, which was raised in petitions by the Department of Personnel Administration and two of the affected public employee unions (the Firefighters' Union, which represents Unit 8; and the Operating Engineers, which represents Units 12 and 13).

## II.

Before addressing the issue of whether the MOU's for Units 8, 11, 12 and 13 and the implementing legislation violate article VII of the state Constitution, we give a brief overview of the origins of the State Personnel Board and the state civil service system of which it is a part.

### A. *State Constitutional Provisions*

In tracing the history of the State Personnel Board, we find helpful our decision in *Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168 [172 Cal.Rptr. 487, 624 P.2d 1215] (*Pacific Legal Foundation*). As we there explained, the California Legislature in 1913 established this state's first civil service system "to combat the 'spoils system' of political patronage in state employment." (*Id.* at pp. 181–182, citing Stats. 1913, ch. 590, p. 1035.) By the early 1930's, that system was "failing in its primary task" because of "numerous politically motivated appointments" and the exemption of most state employees from civil service. (*Pacific Legal Foundation, supra,* at p. 182, citing King, Deliver Us from Evil: A Public History of California's Civil Service System (1979) p. 26.) In 1934, the voters of California passed an initiative measure that added article XXIV to the state Constitution, revising the civil service system and creating the State Personnel Board to oversee that system. The ballot argument described the purpose of the initiative measure as promoting "efficiency and economy in State government," to be achieved by prohibiting "appointments and promotion in State service except on the basis of merit, efficiency and fitness ascertained by competitive examination." (*Pacific Legal Foundation, supra,* at p. 183, fn. 6, quoting Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 6, 1934), argument in favor of Prop. 7, p. 12 (Ballot Pamphlet, 1934 General Election).) Thus, the 1934 amendment to the state Constitution established "the principle that appointments and promotions in state service be made solely on the basis of merit." (*Pacific Legal Foundation, supra,* at pp. 183–184.) This merit system was to be administered by a "nonpartisan Personnel Board." (*Id.* at p. 184.)

Thirty-six years later, at the 1970 general election, the voters of California revised article XXIV, based on changes that the California Constitution Revision Commission proposed. (*Pacific Legal Foundation, supra*, 29 Cal.3d at p. 184, fn. 8, citing Ballot Pamp., Proposed Amends. to Cal. Const., Gen. Elec. (Nov. 3, 1970) pp. 23–24.) The 1970 revision "made no substantive changes . . . and merely deleted obsolete and superfluous language . . . ." (*Pacific Legal Foundation* at p. 184.)

Thereafter, at the June 1976 election, "article XXIV was repealed but its provisions were adopted [by the voters] 'verbatim' as [present] article VII." (*Pacific Legal Foundation, supra*, 29 Cal.3d at p. 184, fn. 8, citing Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Prim. Elec. (June 8, 1976) pp. 58–59.) Article VII of the California Constitution is pertinent to the issue we consider here.

California Constitution article VII provides in section 1, subdivision (a), that "every officer and employee of the State" is in the state civil service system, unless otherwise exempted by the state Constitution. Subdivision (b) of section 1 states that civil service employees are appointed and promoted "based on merit," which is to be "ascertained by competitive examination."

Section 2 of California Constitution article VII provides for the state civil service system to be administered by the State Personnel Board, which consists of five members "appointed by the Governor and approved by the Senate." (Cal. Const., art. VII, § 2, subd. (a).) Section 3, subdivision (a) of article VII describes the board's duties in these words: "The board shall enforce the civil service statutes and, by majority vote of all its members, *shall* prescribe probationary periods and classifications, adopt other rules authorized by statute, and *review disciplinary actions*." (*Ibid.*, italics added.)

B. *Disciplinary Review by the State Personnel Board*

The legislative scheme governing State Personnel Board review of disciplinary actions appears in the Government Code and is described in this court's 1975 decision in *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] (*Skelly*). Below we quote relevant portions of that decision. (Bracketed material reflects statutory changes made after *Skelly*.)

"Under section 19574 . . . the appointing power *must* serve upon the employee and file with the Board a written notice specifying: (1) the nature of the punishment, (2) its effective date, (3) the causes therefor, (4) [a statement advising the employee of the right to answer the charges], and (5) the employee's right to appeal. (§ 19574.)

"Except in cases involving minor disciplinary matters, the employee has a right to an evidentiary hearing to challenge the action taken against him. To obtain such a hearing, the employee must file with the Board a written answer to the notice of punitive action . . . . The answer is deemed to constitute a denial of all allegations contained in the notice which are not expressly admitted as well as a request for a hearing or investigation. (§ 19575; [citation].) Failure to file an answer within the specified time period results in the punitive action becoming final. (§ 19575.)

"In cases where the affected employee files an answer within the prescribed period, the Board, or its authorized representative, must hold a hearing within a reasonable time. (§ 19578; [citation].) As a general rule, the case is referred to the Board's hearing officer who conducts a hearing and prepares a proposed decision which may be adopted, modified or rejected by the Board. (§ 19582.) . . . If the Board determines that the cause or causes for which the employee was disciplined were insufficient or not sustained by the employee's acts or omissions, or that the employee was justified in engaging in the conduct which formed the basis of the charges against him, it may modify or revoke the punitive action . . . . (§ 19583.) . . .

"In the case of an adverse decision by the Board, [either party] may petition . . . for a rehearing. (§ 19586.) As an alternative or in addition to the rehearing procedure, [either party] may seek review of the Board's action by means of a petition for writ of administrative mandamus filed in the superior court. (§ 19588; *Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 637 [234 P.2d 981].)" (*Skelly*, *supra*, 15 Cal.3d at pp. 202–205, fns. omitted.)

Because the State Personnel Board derives its adjudicatory authority from the state Constitution rather than from a legislative enactment, a superior court considering a petition for administrative mandate must defer to the board's factual findings if they are supported by substantial evidence. (*Skelly*, *supra*, 15 Cal.3d at p. 217, fn. 31.)

## C. *Review of Employee Discipline Under the MOU's*

As noted at the outset, the MOU's at issue here allow the state employees in Units 8, 11, 12 and 13 to challenge disciplinary actions either before the State Personnel Board or by filing a grievance before a four-member Board of Adjustment. Employees in Units 11, 12 and 13 who are dissatisfied with a Board of Adjustment decision can challenge that decision through arbitration. (Unit 8 employees can pursue arbitration only if the Board of Adjustment fails to reach a decision.) Have these MOU's, as the trial courts and the Court of Appeal concluded, altered review of state civil service disciplinary actions

in such a way as to violate section 3, subdivision (a) of article VII of the state Constitution providing that the State Personnel Board "shall . . . review disciplinary actions"? We address that question below. For simplicity's sake, we will refer to plaintiffs collectively as "the State Personnel Board," and we will refer to the employee unions and the Department of Personnel Administration collectively as "defendants."

## III.

In deciding whether the MOU's and their implementing legislation violate the state Constitution, we bear in mind the following: " 'Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people's right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly or by necessary implication denied to it by the Constitution. [Citations.] In other words, "we do not look to the Constitution to determine whether the legislature is authorized to do an act, but only to see if it is prohibited." [Citation.] [¶] Secondly, all intendments favor the exercise of the Legislature's plenary authority: "If there is any doubt as to the Legislature's power to act in any given case, the doubt should be resolved in favor of the Legislature's action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used." ' (*Methodist Hosp. of Sacramento v. Saylor* (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161]; accord, *Pacific Legal Foundation v. Brown* [*supra,*] 29 Cal.3d 168, 180.) On the other hand, 'we also must enforce the provisions of our Constitution and "may not lightly disregard or blink at . . . a clear constitutional mandate." ' " (*County of Riverside v. Superior Court* (2003) 30 Cal.4th 278, 284–285 [132 Cal.Rptr.2d 713, 66 P.3d 718].)

The constitutional provision at issue here says that the State Personnel Board "shall enforce the civil service statutes and, by majority vote of all its members, *shall* prescribe probationary periods and classifications, adopt other rules authorized by statute, and *review disciplinary actions.*" (Cal. Const., art. VII, § 3, subd. (a), italics added.) Does the italicized phrase preclude the Legislature from authorizing some entity other than the State Personnel Board (for instance, the Boards of Adjustment described in the four MOU's) to review disciplinary actions taken against state civil service employees? As we explain below, we conclude that it does.

Defendants insist that the language of section 3, subdivision (a) of article VII of the state Constitution stating that the State Personnel Board "shall" review disciplinary actions is permissive, which according to defendants simply allows the board to review disciplinary actions but does not require all disciplinary review to be before the board. Thus, defendants argue that, in permitting disciplined state employees to bypass review before the State Personnel Board in favor of pursuing a grievance/arbitration procedure outside that board, the MOU's and the implementing legislation do not conflict with the state constitutional provision at issue. In support, defendants point to our decisions in *Pacific Legal Foundation, supra,* 29 Cal.3d 168, and *State Personnel Bd. v. Fair Employment & Housing Com.* (1985) 39 Cal.3d 422 [217 Cal.Rptr. 16, 703 P.2d 354] (*Fair Employment and Housing*). Those cases are distinguishable, however. In both, the administrative agency had a specialized function that supplemented rather than supplanted the central adjudicative function of the State Personnel Board, as discussed below.

In *Pacific Legal Foundation,* this court rejected a facial challenge to the State Employer-Employee Relations Act of 1978 (SEERA), enacted by the Legislature to provide for collective bargaining to state civil service employees. We also rejected a facial challenge to the SEERA's statutory provisions allowing the Public Employee Relations Board (PERB) to investigate and devise remedies for unfair labor practices. (*Pacific Legal Foundation, supra,* 29 Cal.3d at p. 197, fn. 19.) We saw no conflict with the language in section 3, subdivision (a) of article VII of the state Constitution vesting jurisdiction in the State Personnel Board to "review disciplinary actions." (*Pacific Legal Foundation, supra,* 29 Cal.3d at p. 196.) We explained that the PERB's authority over unfair labor practices did not overlap with the State Personnel Board's jurisdiction over review of disciplinary actions because the State Personnel Board and the PERB were created to serve "different, but not inconsistent, public purpose[s]." (*Id.* at p. 197.) We noted that the State Personnel Board's constitutional grant of authority was to review *disciplinary actions* against civil service employees, whereas the PERB's legislatively created function was "a somewhat more specialized and more focused task: to protect both employees and the state employer from violations of the organizational and collective bargaining rights" secured under the SEERA. (*Pacific Legal Foundation, supra,* at p. 198.)

In *Fair Employment and Housing, supra,* 39 Cal.3d 422, three applicants rejected for state civil service employment asserted that their rejections constituted physical disability discrimination in violation of the Fair Employment and Housing Act (§ 12900 et seq.) (FEHA). At the request of the State Personnel Board, the trial court enjoined enforcement of the FEHA in matters involving the state civil service, concluding that it conflicted with

the board's exclusive jurisdiction over state civil service employment. (*Fair Employment and Housing, supra*, at p. 427.) This court disagreed, holding that the merit principle governing state civil service was actually reinforced, rather than hindered, by enforcing the FEHA, which "guarantees that non-merit factors such as race, sex, [and] physical handicap" would play no role in appointing state civil service employees. (*Fair Employment and Housing, supra*, at p. 439.)

In both *Pacific Legal Foundation, supra*, 29 Cal.3d 168, and *Fair Employment and Housing, supra*, 39 Cal.3d 422, the Legislature's grant of certain functions to an administrative agency was consistent with advancing the merit principle embodied in article VII of our state Constitution, and in neither case did the statutory scheme undermine or compromise the State Personnel Board's jurisdiction to "review disciplinary actions" (*id.*, § 3, subd. (a)) against state civil service employees.

We now turn to *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133 [43 Cal.Rptr.2d 693, 899 P.2d 79], another case relied on by defendants. There we considered section 18671.1, which requires the State Personnel Board to render a decision on a disciplinary matter either within six months of the employee's filing of a petition for review or within 90 days after the board takes the case under submission. The statute also provides that, if the board does not meet these statutory deadlines, the employee may seek de novo review in the superior court. We held that in providing for de novo review in the superior court, the Legislature did not violate section 3, subdivision (a) of article VII in our state Constitution that the State Personnel Board "shall . . . review disciplinary actions." (*California Correctional Peace Officers Assn., supra*, at p. 1152.) De novo review in the superior court would be allowed only after a failure of the State Personnel Board to comply with the statutory deadlines. In contrast to the situation here, the State Personnel Board was not in any way deprived of the constitutional authority to review disciplinary actions against state civil service employees.

Defendants point to a comment in *California Correctional Peace Officers Assn. v. State Personnel Bd., supra*, 10 Cal.4th 1133, that section 3, subdivision (a) of article VII of the California Constitution does not "limit the Legislature's power to establish civil service procedures," but rather merely ensures that employees can appeal disciplinary actions to the State Personnel Board. (*California Correctional Peace Officers Assn.* at p. 1152.) This, they argue, acknowledges that the Legislature has broad powers to establish civil service procedures, including allowing employees to choose to challenge disciplinary actions before some entity other than the State Personnel Board. Not so. In *California Correctional Peace Officers Assn.*, we did not

consider—much less resolve—the issue here, whether the Legislature could, consistent with section 3, subdivision (a) of article VII, allow employees challenging disciplinary actions to bypass review before the State Personnel Board.

██ Here, the State Personnel Board argues that allowing disciplined state civil service employees to bypass its review in favor of pursuing a grievance/arbitration procedure outside the board would violate the "constitutional mandate" that state civil service appointments and promotions be based solely on merit. The merit principle, as explained earlier, embodies " 'the concept "under which public employees are recruited, selected, and advanced under conditions of political neutrality, equal opportunity, and competition on the basis of merit and competence." ' " (*Pacific Legal Foundation, supra,* 29 Cal.3d at p. 184, fn. 7; see also *California State Personnel Bd. v. California State Employees Assn., Local 1000, SEIU, AFL-CIO* (2005) 36 Cal.4th 758 [31 Cal.Rptr.3d 201, 115 P.3d 506] [invalidating post-and-bid programs that allow *selection* of state employees from a list of eligible candidates based on seniority rather than merit].) As the Court of Appeal here pointed out, administering the state civil service based on the principle that appointments and promotions are made solely on the basis of merit is the "central function" of the State Personnel Board. In the court's view, the board's adjudicatory authority to review disciplinary actions, as set forth in section 3, subdivision (a) of article VII in our state Constitution, is a "necessary counterpart" to the board's power under article VII, section 1, subdivision (b), to appoint and promote public employees based solely on merit. The Court of Appeal reasoned that unless the board could exercise a veto of the discipline imposed on state civil service employees, state agencies "would be free to terminate an employee for spurious reasons in violation of the merit principle." We agree.

██ Thus, when a state civil service employee is *removed* from employment, the interest of the State Personnel Board in ensuring that the disciplinary action does not violate the merit principle is just as great as when an employee is *selected* for state civil service employment. And discipline other than removal from civil service also implicates the merit principle because disciplinary actions in general can have a profound effect on an employee's chance of future advancement within the merit-based civil service.

It would be inimical to California's constitutionally mandated merit-based system of civil service, which is administered by the State Personnel Board, to wholly divest that board of authority to review employee disciplinary actions in favor of an MOU-created review board. This is so because a state civil service based on the merit principle can be achieved only by developing and consistently applying uniform standards for employee hiring, promotion,

and discipline. By vesting in the nonpartisan State Personnel Board the *sole* authority to administer the state civil service system (Cal. Const., art. VII, § 3), our state Constitution recognizes that this task must be entrusted to a *single* agency, the constitutionally created State Personnel Board. Because employee discipline is an integral part of the civil service system, the State Personnel Board's *exclusive* authority to review disciplinary decisions is a critical component of the civil service system.

Defendants insist that the MOU provisions at issue do not adversely affect the constitutionally mandated merit-based civil service system because a disciplined employee who opts for review by the Board of Adjustment instead of review by the State Personnel Board has done nothing more than waive the right to review before the latter. Defendants' argument rests on the incorrect assumption that the merit-based civil service system exists solely for the benefit of state civil service employees to the exclusion of the general public, and therefore a disciplined employee's decision to forgo State Personnel Board review in favor of the grievance/arbitration procedure affects no one other than the disciplined employee. As mentioned on pages 520 and 521, *ante*, the California electorate back in 1934 had a different view of state civil service in mind when it passed an initiative measure that added former article XXIV (now article VII) to the state Constitution, revising the state civil service and creating the State Personnel Board to oversee that system. The ballot argument explained the initiative's goal as promoting "efficiency and economy in State government," to be achieved by prohibiting "appointments and promotion in State service except on the basis of merit." (Ballot Pamp., 1934 Gen. Elec., *supra*, p. 12.) Thus, the public in general has a strong interest in ensuring that partisanship plays no role in selection and advancement within the state civil service. That public interest would be subverted if various ad hoc arbitral boards, operating beyond the control of the State Personnel Board and not bound to apply its merit-based standards, could review and reverse disciplinary actions taken against state civil service employees. As we have explained, the public interest in a merit-based civil service is best served by recognizing that the State Personnel Board's authority to review employee discipline is exclusive.

■ One last point on defendants' "waiver" argument. Under our state Constitution, a disciplined employee has the right to have the State Personnel Board review the disciplinary action. The employee can, of course, decide not to exercise that right at all. If that occurs, the employee has waived that right. But that is different from allowing a disciplined employee the option of *bypassing* review by the board in favor of an MOU-created agency that, unlike the board, lacks express authority under our state Constitution to oversee California's merit-based state civil service system, including review of disciplinary actions taken against employees.

## DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., Moreno, J., and Aaron, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Fourth Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.