Filed 6/20/23  Onwuka v. Dept. of Corrections & Rehabilitation CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES ONWUKA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> DEPARTMENT OF CORRECTIONS AND REHABILITATION, <br><br> Defendant and Respondent. | D080375 <br><br><br> (Super. Ct. No. CIVDS1935462) |


APPEAL from a judgment of the Superior Court of San Bernardino County, David S. Cohn, Judge.  Affirmed.

Law Offices of Gloria Dredd Haney and Gloria Dredd Haney, for Plaintiff and Appellant.

Joseph Macaluso, California Department of Corrections and Rehabilitation, Office of Legal Affairs, for Defendant and Respondent.


James Onwuka appeals from the trial court's judgment denying his petition for a writ of mandate directing the California State Personnel Board (the SPB) to set aside its order sustaining the decision of the California Department of Corrections and Rehabilitation (CDCR) to terminate his

employment as a psychiatric technician at the California Institute for Women (CIW). We conclude that Onwuka's appeal lacks merit, and we accordingly affirm the judgment.

I.

FACTUAL AND PROCEDURAL BACKGROUND

Onwuka was hired as a psychiatric technician by CDCR in 2015 and began working at CIW in March 2016. At CIW, he worked in the Special Care Unit (SCU), which houses inmates with special needs.[1] Onwuka's responsibilities included leading group therapy sessions, dispensing medication, and crisis intervention. Onwuka's supervisor was Kathy R.

On May 2, 2018, one of the inmate-patients, B.M.,[2] became agitated and made loud accusations against Onwuka in the presence of Onwuka and other employees. Among other things, B.M. stated that Onwuka was always asking the inmate-patients personal questions, such as when they lost their

---

[1] Specifically, as the administrative law judge (ALJ) found, "[t]he SCU at CIW is an enhanced outpatient housing unit. It houses female inmate-patients who require significant medication, and who are housed in SCU because their mental stability makes them vulnerable to inmates in the general population."

[2] The names of the relevant inmate-patients are redacted throughout the administrative record. However, in setting forth the factual background we rely on other documents in the record, including the pleadings, the parties' briefing, and an unredacted version of the ALJ's decision, all which identify the inmate-patients by their full names. To preserve their privacy, we refer to the inmate-patients by their initials.

virginity.  Onwuka documented the incident in the shift-report email he sent to Kathy R. in a "Cerner note."[3]

Kathy R. spoke with B.M. on May 8, 2018, and documented B.M.'s allegations against Onwuka.  As Kathy R. later testified, B.M. said, among other things, that Onwuka asked her and other inmate-patients "questions about sex and the first time they've had sex."

On May 9, 2018, after Onwuka learned that he had been reassigned from dispensing B.M.'s medication, Onwuka took the initiative to speak to Kathy R. about the incident with B.M.  Kathy R. wrote an email to her supervisor on May 9, 2018, to document what Onwuka told her.  As set forth in the email, in addition to discussing B.M.'s May 2, 2018 outburst, Onwuka brought to her attention an incident involving a different inmate-patient,

---

[3]     As the ALJ's decision explained, "[a] Cerner note is where comments regarding inmate-patient behavior are placed in an inmate-patient's file."  On appeal, Onwuka complains that the administrative record does not include the Cerner note that he wrote on May 2, 2018, regarding his interaction with B.M.  However, that document does not appear in the administrative record because Onwuka made no attempt to admit it into evidence at the administrative hearing.  Onwuka had access to that document, as the proof of service on him of CDCR's Notice of Adverse Action on January 30, 2019, indicates that the Cerner note was provided to Onwuka as an attachment to Kathy R.'s May 9, 2018 email, which itself was an exhibit to the Office of Internal Affair's investigative report.  Moreover, we note that, when Onwuka complained in the trial court about the absence of the Cerner note, CDCR responded by stating that if Onwuka "has lost or misplaced" the Cerner note "and wishes now to augment the Record, [CDCR] would be more than happy to provide the document and stipulate to the augmentation of the Record[ ]."  We see no indication in the record that Onwuka acted on CDCR's offer.  Finally, although Onwuka's opening appellate brief makes much of the missing Cerner note, Onwuka does not explain why that document is material to the issues he raises on appeal.  It is undisputed that the Cerner note concerned the May 2, 2018 incident involving B.M., which was witnessed by other employees, and about which there appears to be no material dispute.

3

E.G.  As Kathy R. described in her email, Onwuka told her that during a group therapy session on May 2, 2018, E.G. asked Onwuka "if she could journal about the first time she had sex."  Onwuka "responded back to the inmates indicating [that] they can write about whatever they wanted."

In August 2018, the Office of Internal Affairs interviewed Onwuka. Onwuka denied ever speaking to any inmate-patient, including E.G., about losing her virginity.  Onwuka also denied that he ever told Kathy R. about any incident in which E.G. asked during a group therapy session whether she could write in her journal about losing her virginity, and he denied that E.G. ever made such a comment.

In January 2019, CDCR sent Onwuka a notice of adverse action (the Notice), which stated that Onwuka's employment would be terminated effective February 6, 2019.  The Notice explained that the adverse action was being taken based on inexcusable neglect of duty; dishonesty; and other failure of good behavior.  (Gov. Code, § 19572, subds. (d), (f), (t).)  As the factual basis for the adverse action, the Notice stated that on or about May 2, 2018, Onwuka led a group therapy session, immediately prior to which inmate-patient E.G. asked what kinds of things were talked about in the group.  Onwuka told her that she could talk about " 'anything, like when you lost your virginity and whether it was a bad experience or good experience,' " or words to that effect.  Onwuka then asked E.G. whether she was a virgin, to which E.G. answered " 'no.' "  Further, the Notice alleged that Onwuka gave untruthful answers to the Office of Internal Affairs in August 2018 when it was investigating the incident.

Onwuka appealed to the State Personnel Board.  An ALJ held a hearing on June 3 and June 4, 2019.

4

E.G. testified at the hearing. E.G. stated that prior to a group therapy session on "Emotions" in May 2018, she walked in when Onwuka was alone and setting up for the session. As E.G. explained, when she asked Onwuka what kinds of things they would talk about in the group session, "[h]e asked if I was a virgin and I said no[,] and he said you can talk about if it was good or bad . . . ." E.G. stated that on a different day that week, at a group therapy session that included writing in a journal, she made a joke referencing Onwuka's earlier comments to her regarding virginity. Specifically, according to E.G., "[Onwuka] said you can write about anything you want[,] and I said like the first time when I lost my virginity."[4] E.G. testified that Onwuka did not respond.

According to E.G., after Onwuka made the comment to her about losing her virginity, she told another inmate-patient about the comment. Because B.M. was E.G.'s cellmate, B.M. overheard the discussion. E.G. believes that B.M. adopted the story as if it happened to B.M. herself, not to E.G. According to E.G., B.M. is a liar and makes up a lot of stories. E.G. also testified that she did not report Onwuka's virginity comment to the authorities, and she never spoke with Kathy R. about it.

Kathy R. testified at the hearing. She stated that when she spoke to Onwuka on May 9, 2018, he was the one who brought up E.G. Specifically, Kathy R. testified that Onwuka told her that during a group therapy session E.G. asked whether she could write in her journal about the first time she

---

[4]    In his reply brief, citing a specific page of the administrative record, Onwuka represents that during E.G.'s testimony, after explaining the joking comment, E.G. "quickly changed her story, i.e.[,] she did not make any virginity statement or joke during any group session." Onwuka is incorrect. The record shows that E.G. did not take back her story as to what she said during the group therapy session.

had sex. Kathy R. confirmed that she had never spoken with E.G. about any comments involving Onwuka and virginity, and she was not aware of E.G. complaining to anyone about Onwuka with respect to that issue.

During his own testimony, Onwuka stated that other than B.M.'s accusations during her outburst on May 2, 2018, there was never any conversation between himself and E.G., or any other patient-inmate, about losing her virginity. Onwuka also testified that he did not recall any comment by E.G. during a group therapy session about losing her virginity. Finally, Onwuka denied that he told Kathy R. about any such comment by E.G. Instead, according to Onwuka, on May 9, 2018, it was Kathy R. who raised the issue of E.G. by asking Onwuka whether he ever talked to E.G. about anything inappropriate, such as her virginity. According to Onwuka, he responded to Kathy R. by denying any such interaction.

At the hearing, Onwuka called eight different witnesses who worked at CIW to discuss instances that they characterized as showing that, as a supervisor, Kathy R. made false allegations against them. Certain of Onwuka's witnesses also testified that, in general, they would credit Onwuka over Kathy R., or that they had never witnessed Onwuka doing anything that was inappropriate.

On June 27, 2019, the ALJ issued a proposed decision sustaining Onwuka's dismissal. The proposed decision contained an extensive discussion of the relevant testimony and evidence. As the ALJ explained, because Onwuka's testimony conflicted with that of E.G. and Kathy R., a credibility determination was required. The ALJ expressly relied on the demeanor of the relevant witnesses, as well as a detailed review of their testimony and the other applicable evidence, to explain that he was crediting the testimony of E.G. and Kathy R. over that of Onwuka. Having credited

6

those witnesses, the ALJ decided that CDCR had established by a preponderance of the evidence that Onwuka made inappropriate comments to E.G. about losing her virginity, and that Onwuka lied to investigators from the Office of Internal Affairs about that fact, as well as about what he said to Kathy R. about E.G. on May 9, 2018.

Further, the ALJ sustained the penalty of dismissal, explaining that Onwuka's "misconduct was very serious." As the ALJ explained, "Asking an inmate-patient an intimate and personal question about her first sexual encounter without a legitimate business-related reason caused discredit to CDCR and [Onwuka]. This kind of misconduct can discourage inmate-patients from attending group therapy counseling, thereby impairing their rehabilitation progress." Further, due to Onwuka's dishonest statements, "[CDCR] can no longer trust that [Onwuka] can perform his duties in an ethical and honest manner. And the public may now have a legitimate concern that [psychiatric technicians] at CIW engage in inappropriate personal conversations with inmate-patients, and that they will lie during the course of an investigation to cover it up. Furthermore, dishonesty is not an isolated act; it is more a continuing trait of character." Finally, "[Onwuka's] refusal to accept responsibility for his misdeeds, and his reflexive attempts to foist the blame on others, suggests a very high likelihood of recurrence" and due to his "dishonest character, he is likely to commit further dishonest acts." The ALJ concluded that "[t]he significant harm to the public service and high likelihood of recurrence, combined with [Onwuka's] dishonesty, counsel in favor of a harsh penalty," supporting Onwuka's dismissal.

On August 16, 2019, the SPB issued a resolution adopting the ALJ's proposed decision as its own.

7

Onwuka sought judicial review of the SPB's decision by filing a petition for writ of administrative mandate in the trial court pursuant to Code of Civil Procedure section 1094.5. The operative amended petition (the Petition) named as respondents both the SPB and CDCR. The Petition alleged that CDCR wrongfully terminated Onwuka's employment because the charges against him were not proven by a preponderance of the evidence and did not constitute a legal basis for discipline. It further alleged that the penalty of termination was not appropriate. Onwuka sought an order reinstating him or remanding for a new hearing.

After considering the briefing filed by Onwuka and CDCR, the trial court issued a tentative ruling.[5] In the tentative ruling, the trial court explained: "[Onwuka's] challenge to the administrative decision . . . is based almost entirely on credibility issues. In short, [Onwuka] argues that his testimony is simply more believable than the testimony of other percipient witnesses. But that is not what the trier of fact found, and those findings are not inherently incredible. . . . While [Onwuka's] theory that his accusers were simply 'out to get him' is plausible, and a reasonable trier of fact could have believed [Onwuka's] testimony rather than that of his accusers, it is at least equally plausible that his accusers were telling the truth. It cannot be said that substantial evidence does not support the findings." With respect to the penalty, the trial court's tentative ruling stated, "[Onwuka] was a Psychiatric Technician who worked with mentally ill prison inmates. His

_____

[5] Although the Petition named the SPB as a respondent, the SPB did not participate in the briefing in the trial court and has not participated in this appeal. In its answer to the Petition, the SPB explained that "[a]s an impartial quasi-judicial tribunal, Respondent SPB does not anticipate taking any advocacy position," but it would "comply with the final judgment or order in this matter to the extent that it is required to do so at the time specified by law."

8

failure to act with integrity and honesty is not compatible with the public trust. The [SPB] found [Onwuka] breached the public's trust by making sexually inappropriate comments to an inmate-patient. The [SPB] further determined [Onwuka] was dishonest, both in a discussion with his supervisor and during the investigation of his conduct. He failed to admit responsibility, which evidences a strong likelihood of recurrence. There was no abuse of discretion by imposing a penalty of dismissal."

At a hearing on August 13, 2021, the trial court adopted its tentative ruling and denied the Petition. Judgment was subsequently entered against Onwuka. Onwuka appeals from the judgment.

## II.

## DISCUSSION

A. *Legal Standards Governing Review of a Decision of the SPB*

Onwuka's petition was based on Code of Civil Procedure section 1094.5.[6] Under that provision, the trial court inquires "whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc, § 1094.5, subd. (b).)

In many instances, when fundamental vested rights are at issue in an administrative proceeding, a trial court is required to exercise its

---

[6] Onwuka contends in his opening appellate brief that his "claims alternatively . . . sound in ordinary mandamus pursuant to Code of Civil Procedure section 1085 in that the [SPB] has a mandatory duty to approve." However, Onwuka's Petition did not assert a claim under Code of Civil Procedure section 1085.

9

independent judgment in reviewing an agency's adjudicative decision. (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34.)  However, that rule does not apply when a court reviews a decision by the SPB because the SPB "derives its adjudicatory authority from the state Constitution rather than from a legislative enactment." (*State Personnel Bd. v. Department of Personnel Admin.* (2005) 37 Cal.4th 512, 522 (*State Personnel*).)  "Because the SPB has been endowed with quasi-judicial powers, the trial court may not exercise its independent judgment, but must uphold the findings if they are supported by substantial evidence." (*Furtado v. State Personnel Bd.* (2013) 212 Cal.App.4th 729, 742 (*Furtado*).)  This is the case even when a fundamental vested right is at issue. (*Coleman v. Department of Personnel Administration* (1991) 52 Cal.3d 1102, 1125 (*Coleman*) ["Decisions of the [SPB] . . . are reviewed only to determine whether substantial evidence supports the determination, even when vested rights are involved."].)[7]

"In applying the substantial evidence test to [the SPB's] decision, a court must examine all relevant evidence in the entire record, considering both the evidence that supports the [SPB's] decision and the evidence against it, in order to determine whether that decision is supported by substantial evidence.  [Citation.]  This does not mean, however, that a court is to reweigh the evidence.  Rather, all presumptions are indulged and conflicts resolved in favor of the [SPB's] decision.  [Citation.]  [¶]  These standards do not change on appellate review from a trial court's denial of a petition for writ of

---

[7]     In his appellate briefing, Onwuka identifies the general rule of independent judgment review that applies when a fundamental vested right is at issue, such as a petitioner's status as a public employee. (*Seibert v. City of San Jose* (2016) 247 Cal.App.4th 1027, 1042 ["interest in . . . public employment status implicated a 'fundamental vested right.' "].)  However, Onwuka fails to acknowledge that a different rule applies to a review of the SPB's decisions.

mandate from a decision of the SPB; an appellate court independently determines whether substantial evidence supports *the SBP's findings,* not the trial court's conclusions.  [Citations.]  'We do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the [SPB's] decision.' " (*Furtado, supra,* 212 Cal.App.4th at p. 742.)

With respect to the degree of penalty imposed by the SPB, " 'the determination of the penalty by the administrative body will not be disturbed unless there has been an abuse of its discretion.' " (*Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194, 217 (*Skelly*).)  " ' " 'Neither an appellate court nor a trial court is free to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed.' " ' " (*County of Siskiyou v. State Personnel Bd.* (2010) 188 Cal.App.4th 1606, 1615.)  "If reasonable minds may differ as to the propriety of the penalty imposed, there has been no abuse of discretion.  [Citation.]  It is only in the exceptional case, when it is shown that reasonable minds cannot differ on the propriety of the penalty, that an abuse of discretion is shown." (*Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 46-47.)  Indeed, "[t]he fact that reasonable minds may differ as to the propriety of the penalty imposed fortifies the conclusion that the administrative body acted within the area of its discretion." (*Flowers v. State Personnel Bd.* (1985) 174 Cal.App.3d 753, 761.)  On the issue of penalty, we review the SPB's decision without regard to the trial court.  (*Pollak v. State Personnel Bd.* (2001) 88 Cal.App.4th 1394, 1404.)

B.     *Onwuka's Arguments Lack Merit Because It Is Not Our Role to Reevaluate Credibility Determinations*

Although Onwuka's arguments are presented in a somewhat disorganized manner and often lack the required citations to the record, they

11

are clearly targeted at attacking the credibility of the two witnesses upon which the ALJ's proposed decision relied: E.G. and Kathy R.[8]

As to E.G., Onwuka argues that E.G.'s testimony lacked credibility for two main reasons: (1) the End of Shift Report for the May 2, 2018 group therapy session does not indicate that E.G. attended it;[9] and (2) E.G. admitted during her testimony that when interviewed by the Office of

---

[8] In addition to attacking the credibility of E.G. and Kathy R., throughout his appellate briefing, Onwuka repeatedly asserts that CDCR's decision to terminate him, and the SPB's affirmance of that decision was based on accusations made by B.M. against Onwuka, even though B.M.'s credibility was lacking. For example, Onwuka contends that even though B.M.'s accusations were discredited, they "remained the basis for [Onwuka's] termination." Onwuka contends that "CDCR adopted [B.M.'s] lies and ran with them and continued to rely on [B.M.'s] statements to the point of establishing [the Notice] . . . ." Onwuka states, "It is unfortunate that the ALJ relied and continued to rely on the testimony of [B.M.] even though the ALJ (like [Kathy R.]) subsequently found out that [B.M.] had fabricated the entire matter." These assertions are factually incorrect. It is clear from the record that neither CDCR in the Notice, nor the SPB, based its decision on B.M.'s accusations. Indeed, B.M. did not testify at the administrative hearing. Instead, the decision to terminate Onwuka was based on the information provided by E.G. and Kathy R. about what Onwuka said to them.

[9] The End of Shift Report covering the May 2, 2018 group therapy session, as it appears in the appellate record, contains redactions. However, witnesses were asked at the administrative hearing to review that document, and they testified that it did not identify E.G. as an attendee. As both the ALJ and the trial court pointed out, however, the fact that E.G. is not listed in the End of Shift Report is not dispositive because the evidence supports a finding that Onwuka did not always require inmate-patients to sign in when attending group therapy sessions. We also note that although the parties identify May 2, 2018, as the date of a relevant group therapy session, E.G. testified that she was not sure of the relevant dates. Although E.G. stated that the date of the Emotions group therapy session would be May 2 if she previously said so in her interview with the Office of Internal Affairs, that interview is not in the record.

12

Internal Affairs, she omitted the fact that another inmate-patient was present when B.M. heard E.G. talk about Onwuka's inappropriate comments.[10]

As to Kathy R., Onwuka points mainly to the testimony from the various witnesses who recounted allegedly false accusations against them made by Kathy R., or who testified that they would credit Onwuka over Kathy R.[11] Further, Onwuka contends that Kathy R.'s credibility is suspect because of how she described to the Office of Internal Affairs a separate incident involving Onwuka eating lunch at an improper time and place.[12]

---

[10] Referring to the other inmate-patient, E.G. explained at the administrative hearing, "I didn't want to bring her into it."

[11] We note that Onwuka's opening appellate brief misstates the facts as to an incident involving one of the witnesses. That witness testified about an incident in which Kathy R. stuck a clipboard in her face while wrongly accusing her of not going to a meeting. Onwuka's opening appellate brief mistakenly states that the incident happened to Onwuka rather than to the testifying witness.

[12] Specifically, during Onwuka's testimony, he described an incident in February 2018, during which he was eating behind a partition in an area of the clinic when it was not an assigned break time. Kathy R. wrote up the incident for Onwuka's personnel file. In that document, Kathy R. stated that when she approached Onwuka and asked what he was doing, he "jumped up" and "responded that [he was] 'fixing [his] belt' or words to that effect," and he said that he had been eating his lunch. Onwuka argues that Kathy R. should not be viewed as credible because during her interview with the Office of Internal Affairs, Kathy R. changed the description to add the details that Onwuka "pulled up his pants" when she approached him, and was "in the dark in that room with the lights off." At the administrative hearing, Onwuka presented witness testimony that the room was not dark, and he testified himself that he was not pulling up his pants but was tightening his belt after having loosened it to feel comfortable while eating.

We understand Onwuka's arguments, but they are based on a fundamental misunderstanding of the applicable standard of review. As we have explained, courts apply a substantial evidence standard of review in a petition for writ of mandate challenging a decision of the SPB. (*State Personnel, supra*, 37 Cal.4th at p. 522; *Coleman, supra,* 52 Cal.3d at p. 1125.) "On substantial evidence review, we do not 'weigh the evidence, consider the credibility of witnesses, or resolve conflicts in the evidence or in the reasonable inferences that may be drawn from it.' " (*Do v. Regents of University of California* (2013) 216 Cal.App.4th 1474, 1492.)[13]

In sum, the ALJ was entitled to credit the testimony of E.G. and Kathy R., and it is not our role to revisit the ALJ's credibility determinations. The testimony of E.G. and Kathy R., when credited, provides substantial evidence for a finding that Onwuka (1) made inappropriate comments to E.G.; and (2) was untruthful to the Office of Internal Affairs. Those findings support the CDCR's determination that Onwuka engaged in inexcusable

_____

[13]     In contrast, " '[w]hen applying the independent judgment test, the trial court may reweigh the evidence and substitute its own findings for those of the [agency], after first giving due respect to the [agency]'s findings.' [Citation.] This includes examining the credibility of witnesses." (*Alberda v. Board of Retirement of Fresno County Employees' Retirement Assn.* (2013) 214 Cal.App.4th 426, 433.) We also note that, in any case, a court is required to give "great weight" to an ALJ's credibility determinations to the extent they were, as here, expressly based on "specific evidence of the observed demeanor, manner, or attitude of the witness." (Gov. Code, § 11425.50, subd. (b); see also *California Youth Authority v. State Personnel Bd.* (2002) 104 Cal.App.4th 575, 595 [discussing how Gov. Code, § 11425.50, subd. (b) applies to a court's review of a decision of the SPB where the SPB rejected the ALJ's credibility determinations].)

neglect of duty; dishonesty; and other failure of good behavior. (Gov. Code, § 19572, subds. (d), (f), (t).)[14]

C.    *Onwuka Sets Forth No Basis to Conclude the Penalty of Dismissal Was an Abuse of Discretion*

As we have explained, the SPB's determination that dismissal is the proper penalty to impose on Onwuka " 'will not be disturbed unless there has been an abuse of its discretion.' " (*Skelly*, *supra*, 15 Cal.3d at p. 217.) In his appellate briefing, Onwuka sets forth the legal standard for a court's review of the SPB's penalty determination. However, Onwuka includes no discussion applying those legal standards to the facts of his case to explain why he believes that the SPB abused its discretion.

"The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.) "In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record." (*Id.* at pp. 286-287.) " 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' " (*Flores v. Department of Corrections & Rehabilitation* (2014) 224 Cal.App.4th 199, 204.) "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the

---

14    Onwuka develops no argument that the factual allegations against him, *if proven*, would fail to satisfy the legal standards for inexcusable neglect of duty; dishonesty; and other failure of good behavior. (Gov. Code, § 19572, subds. (d), (f), (t).) We accordingly limit our analysis to whether substantial evidence supports the ALJ's factual findings.

15

point as forfeited." (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075.)

Because Onwuka has failed to present any cogent legal argument challenging the penalty of dismissal, the issue is forfeited, and we accordingly do not address it.

DISPOSITION

The judgment is affirmed.

IRION, J.

WE CONCUR:

O'ROURKE, Acting P. J.

BUCHANAN, J.

16